**MIAMISBURG (city) v BLACKBURN**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1177. Decided Aug 3, 1933

Lawrence Baver, Miamisburg, R. N. Brumbaugh, Dayton, Mahlon Gebhart, Miamisburg, for plaintiff in error.

McConnaughey, Shea, Demann & McConnaughey, Dayton, and Earle C. Null, Miamisburg, for defendant in error.

## OPINION

By BARNES, J.

The petition in error sets out eleven separate grounds of error, as follows:

1. The court erred in overruling the motion of plaintiff in error to direct a verdict at the close of the testimony of plaintiff below.

2. The court erred in overruling the motion of plaintiff in error to direct a verdict at the close of the testimony in the case.

3. The court erred in admitting evidence over the objections of plaintiff in error and to which it excepted at the time.

4. The court erred in excluding evidence over the objections of plaintiff in error and to which it objected at the time.

5. The court erred in refusing to give the jury the special charges asked by plaintiff in error.

6. The court erred in giving to the jury the special charges asked by the plaintiff below.

7. The court erred in its charges to the jury.

8. The court erred in overruling the motion for a new trial.

9. That said judgment is contrary to law and against the weight of evidence.

10. The verdict and judgment are excessive in the amount of damages allowed and the verdict appears to have been given under the influence of passion and prejudice.

11. For other errors on the face of the record prejudicial to the rights of plaintiff in error.

These several grounds of error will be taken up in order, although in some instances they may be grouped.

Numbers 1 and 2 will be considered together.

We think the question as to whether or not the defendant was guilty of negligence in any of the particulars set out in the petition was properly a question for determination by the jury. It is a matter of common knowledge that high tension lines of electricity are very dangerous unless properly guarded, insulated and in such location as to guard against contact therewith. It was properly submitted to the jury whether or not the construction, considering its close proximity to the car in question and the accessibility of the wires to a man standing on top of the car was a reasonably safe construction. The wires, in the main, were insulated by very heavy waterproofing and according to the testimony this insulation was in good condition. However, where a wire was wrapped around a glass insulator and cut off, the end was exposed. Apparently it was this exposed end with which the plaintiff came in contact. The testimony of one of the experts was that it was necessary to come in contact with an uninsulated wire in order to receive the burns, and this same expert also stated that a contact with this snipped end would produce burns. The plaintiff introduced testimony that the proper procedure would have been to have taped and thus have insulated this snipped end. The defendant presented evidence of proper construction.

A more serious question arises on the issue of contributory negligence on the part of the plaintiff.

It is a well recognized principle of law that when one intentionally encounters a known danger, he assumes the risk. The law requires everyone to have regard for his own safety. Everyone is presumed to be in the exercise of due care. If the injured person has failed to exercise the care that the ordinary prudent person would under the same or similar circumstances, he is guilty of contributory negligence and can not recover.

Applying these principles to the instant case, do we find such a condition as would render the plaintiff, Blackburn, guilty of negligence as a matter of law? A portion of his testimony urges very strongly to that conclusion, but a careful reading of all his testimony in the light of other established facts leads us to the contrary view.

On page 107 of the record, in the cross examination of Blackburn, appears the following:

Q. You knew 2300 volts coming in over those wires remain 2300 volts until those wires got into the transformer?

A. Yes.

Q. You knew if a man touched a wire, got hold of it, a lot of danger to him?

A. Sure ought to be.

Q. You knew that?

A. Yes.

At page 120 there was seeming contradiction by plaintiff when he stated that he did not know that the wires were dangerous. He attempts to explain this inconsistency by saying that he did not know which wires

carried the high voltage and which the 110 volts. This explanation is not very satisfactory, but the whole question is cleared up very much by the testimony of other witnesses as to the character of the construction.

These wires, running from cross arm to cross arm, were insulated and, of course, that condition was apparent. We do not think the plaintiff was intending to say that he knew the touching of this insulated wire was highly dangerous. The very purpose of the insulation was in the main a safety measure. It would be unthinkable that any wire construction would be maintained at that height and in such close proximity to the railroad track without being insulated. We do not understand that there is any claim that Blackburn would have been injured by merely touching the insulated wires strung between, the crossarms. His injury was occasioned by coming in contact with the exposed end of the uncovered copper wire. There is nothing in the evidence to indicate that Blackburn knew about this exposed end. It may or may not be negligence for a person to purposely come in contact with any of the wires, but it would not be so as a matter of law. This is entirely a question for the jury.

We think the court was right in overruling the motion to direct a verdict at the close of plaintiff's case and renewed at the close of all the testimony.

On the question of admission and exclusion of evidence no discussion is presented in plaintiff's brief and we will pass grounds numbers 3 and 4 with the observation that we fail to find any prejudicial error in the admission or rejection of testimony.

Error No. 5 is as follows:

"The court erred in refusing to give to the jury the special charges asked by plaintiff in error."

This ground of error refers to Special Request No. 4, which reads as follows:

"If you should find by a preponderance of the evidence that Richard Blackburn was not working for Harry Shafford at the time of his injuries, but that he was a mere volunteer standing on the edge of the coal car and kicking coal without the knowledge of Harry Shafford, then I charge you that Richard Blackburn was at the most a mere licensee on the premises and took his license subject to dangers and perils known to him or that could have been known

to him in the exercise of ordinary care, and if his injuries were the result of a danger known to him or that could have been known to him in the exercise of ordinary care, the plaintiff can not recover, the sole duty of the defendant under such conditions being not to wilfully injure him."

This ground of error will be considered in connection with Special Charge No. 4, which was given to the jury on request of the plaintiff:

"There is no issue of trespasser, licensee or invitee in this case. I charge you that regardless of how the plaintiff in this case came to be upon the car which was placed upon the side track west and next to the structure in question, the defendant in this case is charged with the duty to exercise ordinary care in the prevention of injury to him."

The court in its general charge gave to the jury substantially the same principle of law as contained in plaintiff's Special Request No. 4.

Under the evidence we think the court was warranted in refusing to give Special Request No. 4 as presented by counsel for defendant below. We base this conclusion on an analysis of the evidence in the record and our conclusion that the uncontradicted evidence establishes that Blackburn was more than a mere licensee on the premises. Of course, the charge would be improper unless there was some evidence to support it. Under the uncontradicted evidence, Blackburn had been employed continuously and regularly by Shafford for almost two years. There was no requirement that he report to anyone upon his arrival for work or at quitting time. The work was there to do and he knew what to do without any orders. He went back to this same work as soon as he was able after the accident and continued there until January of the following year. On the morning of the accident he did not arrive at the usual hour, due to the fact, as he says, that he overslept and then walked to Shafford's home, a distance of one mile, for a truck and not finding it there, walked another mile to the yard, arriving there between 7:30 and 8 o'clock. He visited around in other parts of the yard, talking with other men not in the employ of Shafford. He went to a building at a distant corner of the yard, then came back to where Shafford and his brother were unloading the same gondola car that they had been work-

ing on the day before. He observed as he came up that the Shaffords were having difficulty in getting the coal to flow and he said to Shafford that he would help to kick it down, and thereupon proceeded to climb up the car and walked around and kicked with his left foot and very shortly thereafter the accident happened. Shafford did not see him or hear him nor did he know that he was on the car until after the accident. Shafford did not pay him for any part of the day's work. Under this uncontradicted state of the evidence, we think it establishes that Blackburn was engaged in his employment. Both the Shaffords and Blackburn testified that this was the usual method they employed in breaking coal loose from the side of the car so as to start the flow through the hopper. Shafford, as a witness for plaintiff, when asked if he had expected Blackburn to come to work on the morning of the day of the accident, testified that he had not told him not to come, that the work was there for him to do and he knew what to do. On cross-examination the grounds were laid for impeachment of Shafford by asking him if he had not said at different times and different places to some five or six people, that Blackburn was not working for him that day. He denied having made the statement. Defendant called these witnesses and they testified that Shafford had made such statements. The only effect of this evidence is impeaching in its character. It would not be considered as substantive evidence that Blackburn was not working for him on the day in question. Should Shafford's testimony be entirely eliminated, we still have the uncontradicted evidence supporting employment.

Another claim of defendant is that plaintiff Blackburn was not wearing his working clothes, but this question is only brought in the record in the form of impeaching testimony. Even if there was evidence of substantive character to the effect that Blackburn had not intended to work that day, and of his own volition volunteered to do this simple service as a favor, intending to leave thereafter and not work any more that day, we still think that the nature and character of his previous employment rendered his presence there more than that of a mere licensee.

Under this analysis of the testimony and the record there could be no prejudicial error in the court giving Charge No. 4 on request of counsel for plaintiff. Parenthetically, we might say we make no determina-

tion as to its correctness under a different state of facts.

Counsel for defendant in their brief discuss no other special instructions given to the jury before argument. Likewise, this is the only objection to the general charge discussed in the brief.

The 8th ground being claimed error in overruling motion for new trial, need not be discussed since the same questions were raised in the motion for new trial that were set out in the petition in error.

The 9th ground is as follows:

"That said judgment is contrary to law and against the weight of evidence."

It is our conclusion that under the law and evidence, the jury were warranted in returning a verdict for the plaintiff.

Claimed error No. 10 reads as follows:

"The verdict and judgment are excessive in the amount of damages allowed and the verdict appears to have been given under the influence of passion and prejudice."

In our judgment this furnishes a more serious question than any of the other claimed errors. One question urged is that under no circumstances should the plaintiff be permitted to recover for injuries sustained in his fall. This on the theory that plaintiff was falling and, in his effort to break the fall, grabbed the glass insulator and came in contact with the exposed wire. On this ground the evidence is conflicting. Plaintiff in his evidence says that he did not slip, but inadvertently came in contact with the exposed wire when holding his right arm out to balance himself on the four-inch metal strip at the top of the car. If the contact occurring in this way knocked him off the car, then the injuries sustained in the fall would be a proper element of damages to be considered by the jury. If, according to the testimony of another witness, he slipped and was falling and grabbed the insulator to prevent the fall, then any injuries sustained in the fall would be an improper element to consider by the jury, since the question as to whether or not his injuries would have been less or greater had he fallen without touching the wire would be pure speculation.

The court did not specifically charge the jury on these two theories, but in the absence of any request to so charge, the general charge is not objectionable. There is very serious doubt as to whether or not the claimed injury to plaintiff's back is at-

tributable to this accident. If we were triers of the fact we doubt very much if we could so find. We must follow the well recognized principle that the jury are the triers and determiners of the facts. It is only when their determination is so manifestly against the weight of the evidence as to shock the conscience that the court should interfere.

Neither do we think we should determine the amount of verdict excessive.

It is our conclusion that the finding and judgment of the court below must be sustained at plaintiff in error's costs. Exceptions will be allowed to plaintiff in error. Entry may be drawn accordingly.

HORNBECK, PJ, and KUNKLE, J, concur.

### ON REHEARING

Decided Aug 28, 1933

By THE COURT

The above entitled cause is now being determined on application of plaintiff in error for rehearing on decision rendered August 3, 1933. Memoranda accompany the application.

The first question submitted challenges the statement made in the original opinion as to the evidence being conflicting as to whether or not Blackburn inadvertently came in contact with the wire and as a result thereof fell, or whether he was falling and grabbed the wire to prevent or break his fall.

We have re-examined the record and now repeat that the evidence is conflicting to the point that it will admit of either conclusion. The statement made by Blackburn that he was balancing himself to keep from falling on the coal or down to the ground, does not necessarily mean that he was in the act of falling.

On the second ground set out in the application, we would call attention to page 10 of the original opinion, starting at the seventh line from the top and continuing to the end of that paragraph.

We reiterate that the uncontradicted testimony in the case shows that Blackburn was more than a mere licensee.

We recognize the general rule that where the burden is upon the plaintiff to establish an issuable fact it is always a jury question, even to the point of whether or not they believe the uncontradicted testimony. Counsel are now invoking this principle in their application for rehearing. We

think §11364 GC fully meets the contention. We also make reference to the very recent case of **Hoare v City of Cleveland, 126 Oh St, 625,** also reported in Ohio State Bar Association Report under date of August 21, 1933, at page 625; also in the **Ohio Law Bulletin and Reporter under date of August 21, 1933, at page 369.**

The motion for rehearing will be overruled.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.