cause is reversed and remanded to the court below for further proceedings according to law.

*Judgment reversed and cause remanded.*

MONTGOMERY and SHERICK, JJ., concur.

THE OHIO POWER CO. *v.* BECK.

(Decided May 25, 1935.)

*Messrs. Lynch, Day, Pontius & Lynch,* for plaintiff in error.
*Messrs. Amerman & Mills,* for defendant in error.

SHERICK, J. The purpose of this proceeding is to reverse a judgment entered on the jury's verdict in

favor of the defendant in error, John Frederick Beck. The action was for the recovery of damages for personal injuries sustained by Beck while working as an employee of The Stark Brick Company, unloading coal on a tipple on the brick company premises.

The brick company, having sustained a disastrous fire, proceeded in January of 1925 to let a contract to the Dillon Electric Company to install its electrical work and equipment. It sublet to The Ohio Power Company, plaintiff in error here, the installation of a high tension line on the brick company's property, for which it paid direct to the power company. Since the time of this service the power company has furnished all electric energy to the brick company over the line which it constructed.

It is proven that this power line at the time of construction had a clearance of approximately twenty-two feet; but that in 1927 the brick company relocated its tipple and unloading platform so that such no longer paralleled the high tension line, but was immediately thereunder, which sagged at that point and left a clearance of about twelve feet.

On September 19, 1933, the defendant in error Beck, whose regular work was in operating a steam shovel, was called upon to perform labor in operating a gas engine which hauled cars to the tipple, which cars were there dumped. This work had occasionally been performed by him as an emergency man. In dumping cars it was necessary to use a twelve-foot instrument. The tool provided to accomplish this work was an iron bar with a fish plate attachment. While unloading a car Beck raised the bar, which then came in contact with the high tension wire carrying 22,000 volts. As a result therof he was severely shocked and injured.

It is strenuously claimed by the plaintiff below that the power company owned this line, that it had built it, and its poles were marked with The Ohio Power Company insignia, which was indicative of ownership.

It is further claimed that it had twice repaired this line, in 1927, and after the accident, by mending a break made by a steam shovel in 1927 and elevating the high tension line at the tipple after plaintiff's injury. Ownership is denied by the power company. It avers and proves that the brick company paid for this service.

The plaintiff also claims that the power company inspected this line frequently, that it had a right to enter upon and repair its appliances; that it had control over this line, and that the power company owned the electric energy which it furnished the brick company, which passed over it until it reached the meter which was located 50 to 100 feet beyond the tipple and unloading platform; and that the power company knew of the dangerous proximity of its sagged wire thereat and failed to make the place safe from danger, of which the plaintiff had no knowledge.

The power company says that it is not liable. It maintains that it not only does not own this line, but that it exercises no control over it; and that if it did own, or control it, it had no notice of any dangerous situation developed by the relocation of the tipple and the close proximity of the wire thereto. It is upon these disputed facts and divergent claims that the power company's first claimed error is predicated.

We are inclined to think that the question of ownership is not determinative of this case. It is, however, of considerable moment to determine whether the power company did exercise some vestige of control over the high tension line to its meter beyond the tipple. As a premise to further comment we would first point out that this state of facts finds no parallel in those cases where gas or electric energy is supplied to domestic consumers at usable pressure or power. This is a case of transmission of a deadly agency into and upon another's property to a point where it must be and is measured, stepped down and made available for the consumer's use. In the service contract is found

a clause stipulating that current at approximately 22,000 volts shall be delivered at the meter installed by The Ohio Power Company on the brick company property; and that the power company shall have free access to the premises for the purpose of examining, repairing or removing meters or other appliances belonging to the power company.

It is clear that the electric energy furnished was the property of the power company until it reached the meter beyond the tipple. There were mutual advantages to both contracting parties. By measuring this current within the plant, and closer to its point of consumption, the brick company was advantaged in that the power company would bear the loss of current lost by groundage from the property line to the meter. On the other hand the power company, without expense for line erection or maintenance within the brick company plant, had permissive use for transmission of its property.

To say that a power company has no control over an appliance of another, which it in fact exclusively used for the conveyance of its own property, the commodity in this instance being a deadly agency, is to conclude that one may be excused from responsibility because another actually owns the property which it uses. It is certain that when a bailee, gratuitous or otherwise, makes use of property potentially dangerous, or makes it so by the manner of his use, and thereby injures another, where that other has a legal right to be, he can not be heard to say that he is not liable because another actually owns the property. We see no distinction in principle between the presented situation and suggested comparison.

The power company had at least possessive control of this line up to the meter. If it turned a dangerous agency thereon, knowing of defects therein, or there were defects that it might have discovered upon reasonable examination, it is just as negligent because of

the dangerous defect therein as if it actually owned the appliance. One is not entitled to notice of that which he is bound to know; but if notice was necessary then we must conclude that the record contains sufficient facts thereof to sustain the jury's verdict. The power company had by virtue of its permissive and exclusive use of this line a corresponding duty to perform, that is to see to it that its commodity could be safely conducted over the property without injury to the employees of the brick company, who had a legal right to be in and about this line.

It is said that the trial court erred in its refusal to give to the jury before argument defendant's special request No. 2. The court properly refused this request for the reason that it relieved the power company of all liability if it found that the brick company owned the transmission lines. It did not correctly state the law, as we have hereinbefore stated.

Defendant's third special request is likewise objectionable. It presupposes non-liability if the brick company had exclusive control over the line, which it admittedly did not. The power company had exclusive use thereof for its current. Use presupposes some degree of possession and control, and related duty. The request is further objectionable in what is specified concerning notice.

It is next claimed that the trial court erred in its general charge on the question of sole negligence. The following is the portion thereof objected to:

"There is an allegation of sole negligence on the part of the plaintiff as alleged in defendant's answer. I read that to you. I said that made an issue. If defendant proves by a preponderance of the evidence the allegation that the injuries were caused by the sole negligence of the plaintiff then your verdict in this case should be for the defendant."

It is said that this paragraph placed an improper burden on the defendant, which is contrary to the rule announced in *Montanari* v. *Haworth*, 108 Ohio St., 8, 140 N. E., 319, and *Hanna* v. *Stoll*, 112 Ohio St., 344, 147 N. E., 339.

The court said that sole negligence was an issue in the case, but he did not say that it was an affirmative defense which the defendant must prove.   The court simply said that if the defendant did prove by a preponderance of the evidence the allegation of plaintiff's sole negligence, then the jury should find for the defendant. We are of opinion that the jury was not misled by the words used. It clearly understood from defendant's special request No. 4, which was given, that if the plaintiff failed to exercise due care for his own safety, and the lack thereof "contributed directly in the slighest degree to cause his injuries," then the plaintiff could not recover.   By this request the jury knew that the burden of proof of sole negligence was not on the defendant, but that if plaintiff's evidence tended to establish that he was negligent in the slightest degree, proximately and directly contributing to his own injury, then plaintiff could not recover.   The court went even further than this, for the jury was erroneously instructed that if plaintiff's own evidence established a presumption of negligence, upon his part, then the burden was upon him to "remove" such.   We see no error in the respect claimed.

It is also advanced that the court erred in his instruction to the jury upon the question of proximate cause, because of the fact that the court employed two illustrations in conjunction with a proper definition of the phrase. It is said that these allusions in effect removed the question of proximate cause from the jury, and violated the rule of *Marietta & Cincinnati Rd. Co.* v. *Picksley,* 24 Ohio St., 654, which held that a charge

was prejudicially erroneous which consisted mainly of extracts from opinions in reported cases. Surely that was not what was done in the present instance. Perhaps these illustrations might have been dispensed with, but we can not conclude that if erroneous the same were prejudicially so. The court throughout its charge told the jury that the burden was upon the plaintiff to prove that the act or acts of negligence claimed as against the defendant were the proximate and direct cause of his injury.

It is lastly asserted that the undisputed evidence shows that plaintiff was guilty of negligence as a matter of law. We see no merit in this contention. It would be unprofitable to review the evidence upon which this claim is based; suffice it to say that it is our judgment from a consideration thereof that the evidence presented a question of fact for the jury to determine whether the plaintiff was negligent in any respect which contributed to or was the sole cause of his injury.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.