**COYNE v TROY (City)**

Ohio Appeals, 2nd Dist, Miami Co

No 398.   Decided Jan 25, 1941

58

Harry P. Jeffrey, Dayton, Baird Broomhall, Troy, for plaintiff-appellee.

Robert S. Miller, City Solicitor, Troy, Matthews, Matthews & Altick, Dayton, for defendant-appellant.

**OPINION**

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment for $10,000.00 in favor of the plaintiff and against the defendant.

Three errors are assigned.

(1) Overruling motions for directed verdict for judgment notwithstanding the verdict and for new trial.

(2) Error in the charge of the court.

(3) Excessive verdict.

(4) Other errors.

The action was for damages for personal injuries suffered by plaintiff by reason of burns resulting from contact with a wire charged with electricity. It was the claim that the injuries suffered resulted from the negligence of the defendant in nine particulars.

The defense was a general denial and a charge of contributory negligence against the plaintiff.

There is little dispute in the facts, which, insofar as pertinent, are as follows: Plaintiff, a young man 22 years of age, was in the employ of the Troy Telephone Company as an installer of telephones, which among other things required the stringing of wires on the poles of his company. He was an experienced lineman. On March 28, 1931 at about 10 o'clock in the morning in the line of his duty he went to the northeast corner of the intersection of McKaig Avenue and Ash Street in the city of Troy. McKaig Avenue runs east and west and is intersected by Ash Street from the north which ends at McKaig Avenue. Garfield Avenue intersects McKaig Avenue from the south and about 10 feet west of Ash Street projected across McKaig Avenue. There was a pole of the Troy Telephone Company on the north side of McKaig Avenue about 30 feet east of Ash Street at its intersection with McKaig Avenue. The next pole of the Telephone Company to the west was about 110 feet on the north side of McKaig Avenue. Ash Street is about 30 feet wide. There were approximately 10 iron wires of the Telephone Company strung from the two poles heretofore mentioned and at a height of about 40 feet from the street. Some 7 or 8 feet below these wires was an open telephone cable suspended by a grounded iron wire known as a messenger. Three wires of the defendant company were suspended from a pole on the west side of Ash Street about 30 feet north of the north line of McKaig Avenue and extending to another pole on the east side of Garfield Avenue just beyond the south line of McKaig Avenue. The pole on Ash Street was some 26 feet above the street, the pole on Garfield Avenue some 20 to 24 feet above the ground and the wires, as they passed the Telephone Company's wires at the intersection of McKaig Avenue and Ash Street, were about 20 feet above the street. Two of these electric wires were primary wires of 2300 volt capacity. The third was an arc circuit which on the morning of the accident carried no current.

Upon arriving at the intersection of McKaig Avenue and Ash Street, plaintiff went to the Telephone Company's pole east of Ash Street, climbed to the top thereof and while working on the pole one of the wires broke and fell into a leafless tree which stood at the northeast corner of McKaig Avenue and Ash Street.

When plaintiff observed the broken wire he called his company for instructions and was directed to repair it. Thereupon he secured a coil of new telephone wire, laid it upon the ground to the east of the east pole upon which he had been working, took one end of the coiled wire, again climbed the pole, put the wire over the cross-arm from east to west at the top of the pole. With the new wire in hand, plaintiff climbed down to the ground and moved with it over to the old broken wire which was suspended from the tree into which it had fallen. Plaintiff reached up on tiptoe and made a pulling splice of the new and old wires. He then took up the slack in the broken

wire by winding the new wire into the coil which he left upon the ground east of the east pole. He then moved over to the Telephone Company's pole to the west to which the other end of the broken wire was attached. He climbed this pole with his spurs until his head was above the cross-arm. His safety belt was fastened around the pole. He was facing north and with his hands, upon which he had ordinary gloves, he prepared to pull the spliced wire up to the west pole upon which he was standing. As he prepared to pull he suddenly felt an electric shock, which had the effect of stiffening his right foot, separating it from the pole and, unconscious, he was suspended by his safety belt from the pole below the level of the messenger. Thereafter he was taken down, removed to a hospital and his injuries treated.

The plaintiff is the only witness to the occurrences up to the time of his injury excepting one other witness who merely stated that she saw him climb to the top of the pole and fall over.

The plaintiff was rendered unconscious by the shock and had no recollection of anything that happened until after he was taken down from the pole. Plaintiff testified that the wooden poles which he climbed were wet and stated that he judged that it had rained the night before. There is some other testimony in the record to effect that it was a frosty morning.

It appeared in the evidence of the plaintiff in chief that the telephone lines carried 110 volts of electricity from which he said there was no danger because of the wet poles and defined a hot wire as ordinarily designated as a live wire carrying an electric current other than telephone current. He testified that the power lines of the defendant were not equipped with screens, baskets or any type of guards or other safety device. He also said that before he made the splice of the new wire with the old, he looked to determine if the telephone line was over the power line and it is obvious that it was not because he received no shock when he made the splice. This is sub-

stantially the state of the record when plaintiff rested after which defendant moved for a directed verdict. The court overruled the motion and the defendant's testimony developed some other probative facts.

There were nine specifications of negligence and the defendant at no time moved to withdraw any of them from the consideration of the jury. The first and second specifications charged failure to properly insulate and failure to keep the insulation on the high tension wires in such condition as to prevent contact with the flow of current through the wires. Third and fourth specifications were that the defendant failed to have high tension wires screened, encased or otherwise protected or equipped with ground detectors or other devices. The fifth, that the defendant failed to maintain a proper inspection system of its power plant equipment so as to enable it to discover the insufficient insulation on its wiring system. The sixth, that the defendant failed to properly repair its system of wiring. The seventh, that it failed to maintain its wiring at a sufficient height above the ground to prevent contact with other equipment maintained above the surface of the street. The eighth, that defendant failed to maintain its high tension wiring system at sufficient height so as to avoid contact with trees growing at said place, resulting in the destruction of the wiring insulation. The ninth, that defendant failed to maintain proper clearance for its high tension wires.

From defendant's testimony it developed that when the line crew of defendant company came to the scene of the accident the broken and spliced telephone wire was hanging down in the intersection of McKaig Avenue and Ash Street, having fallen from the east telephone pole and still fastened to the cross-arm at the top of the west telephone pole. It was hanging upon and over the east electric primary wire of defendant company and extended into the street and gutter in McKaig Avenue to the east of Ash Street. The wire was then energized. A lineman

cut the telephone wire loose and when he began to pull the telephone wire from the electric primary wire, that wire burned in two places and fell to the street. The primary span was then removed and replaced by a new wire. Thereafter the second primary wire was found to be burned in two and it was replaced.

It does not appear which set of wires was erected first nor definitely when defendant company's wires were erected but it is testified that they had been up for at least 8 years prior to the date of plaintiff's injury.

Upon the question of insulation most of defendant's witnesses say that the electric wires carried weather-proof insulation of the type commonly used for such wires and that it was in good condition and it was the claim of the defendant that the cutting through of the insulation was caused by the dragging of the telephone wire over it. Here is found marked difference between the testimony of the plaintiff and the theory of the defendant, plaintiff claiming that he had not dragged the wire, at least not to any appreciable extent, before he received the shock.

One of defendant's witnesses, Leonard, a lineman for defendant company, said that the covering for the electrical wires was weather-proofing and that "it really isn't regular insulation. It is weather-proofing to keep it from corroding".

The gist of the evidence is such that the jury had a right to find that the wires of defendant company were not properly insulated to keep current from escaping therefrom.

The defendant renewed its motion for a directed verdict at the conclusion of all the testimony, which motion was overruled and the cause was submitted to the jury, resulting in a unanimous verdict for the plaintiff. After motion for new trial was filed and overruled and motion for judgment notwithstanding the verdict was filed and overruled, judgment was entered for the plaintiff.

The first error assigned is the overruling of the motions of defendant for directed verdict, for new trial and for judgment veredicto non obstante.

It is the claim of appellant that the Telephone Company, the employer of plaintiff, and the defendant company were secondary users of the streets of the city of Troy and that to the plaintiff the defendant owed the obligation only not to wilfully injure him and cites Clarke v City and Suburban Telephone Association, et, 3 O. L. R. 482, Borck, Admr. v Cincinnati Gas & Electric Company, 3 O. L. R. 546, and 5 N. P. (N.S.) 526, Calumet Electric Street Railway Company v Grosse, 70 Ill. Ap. 381, 14 A. L. R. 1024.

The cases cited by appellant support its position, especially Clarke v The City & Suburban Telephone Association, et, but the judgment of the court could as well have been placed upon the doctrine of assumed risk, which has no place in this case, as upon the basis of degree of care owing from the defendant to plaintiff.

We do not find an opinion of any superior court in Ohio confirmatory of the doctrine announced in the cited case. We believe the better rule is found in 20 C. J. 345.

"The duty of exercising care extends to every place where persons have a right to be, whether for business, convenience, or pleasure, * * *. The proper degree of care requires a greater precaution against injury from electric wires when so placed that persons are likely to come in contact therewith than at more isolated points to which persons are not expected to resort."

The degree of ordinary care would seem to be reasonable and appropriate in the instant case. What that care is specifically must depend upon all the facts and circumstances appearing.

In Ohio, there was until a comparatively recent date. although not effective at the time the plaintiff was injured, a statute requiring electric line and power wires to be covered with waterproof insulation. While effective, a violation of this statute was held to be negligence per se. Although the

section has been repealed and it is no longer negligence per se to fail to properly insulate high power lines, whether or not such failure constitutes want of exercise of ordinary care becomes a question of fact in most instances.

A careful examination of cases cited and independent investigation produces no case with facts identical to those found in this case. However, there are several authorities in jurisdictions in Ohio and elsewhere which are of value by analogy.

In Ziehm v United Electric Light & Power Company, (Md.) 64 Atl. 61, plaintiff, a telephone lineman, was climbing one of his company's poles. Defendant company maintained certain high tension wires near this pole and the lineman came into contact with one of these defectively insulated wires. It was held that the defendant company owed plaintiff a legal duty to have its wires so placed and insulated as to permit him to perform his work in safety. A number of cases are cited in support of the judgment. To like effect, San Antonio Gas & Electric Co. v Badders et, (Tex.) 103 S. W. 229, Ladow v Oklahoma Gas & Electric Company (Okla.) 119 Pac. Rep. 250.

In Miamisburg v Blackburn, 16 Abs p. 38, the plaintiff, an employee of a Coal Company which was unloading coal by a conveyor climbed up to the top of a gondola car, walked across the end and down the side on the steel plate thereof. The car was about 11 feet high and while the plaintiff was kicking coal loose so that it would flow into the hopper of the conveyor his hand came into contact with a high tension wire on the transformer construction of defendant electric company. The wire which seriously burned the plaintiff was some 14 feet from the ground. One of the specifications of negligence was that the wire was not properly insulated. This court supported a verdict in behalf of the plaintiff, Judge Barnes writing the opinion. There is some similarity in the facts in this and the instant case. It could well have been urged that the defendant company had no reason to antici-

pate that anyone from the Coal Company would be in such proximity to the high-power wire as that they would be endangered by failure to insulate and it was an unusual set of circumstances which occasioned plaintiff's contact with the wire. However, the defendant company was charged with the obligation of due care toward the employee of the Coal Company.

In Holden v Cincinnati Gas & Electric Company, 57 Oh Ap 448, 26 Abs 13, plaintiff, a workman engaged in trimming trees with long pruning shears was burned when the shears touched high voltage electric wires running through the tree. The court held that,

"Wherever a person or corporation through his or its activities is brought into proximity with another, some care is required so that harm will not result to such persons, regardless of statute."

and that,

"Though an electric company has the duty of insulating electric wires and keeping them insulated only at such points or places where there is reason to apprehend that persons may go for work, business or pleasure, whether or not such duty has been performed is a question of fact for the jury."

We find no error in the action of the trial judge in imposing upon the defendant the obligation of ordinary care toward plaintiff in the maintenance of its wires and equipment.

Under the first assignment of error it is also claimed that as there is no express proof of direct contact of the telephone wire with either of the defendant's primary wires to permit a finding of negligence against the company would violate the rule against predicating one inference upon another. We find no merit in this claim. The theory suggested by defendant that the plaintiff might have suffered his injuries from the energized telephone

wire is untenable. It is disproved, not only by the testimony of the plaintiff to which we have heretofore alluded, but also by the evidence on behalf of the defendant. It is evident in the situation presented at the time plaintiff was burned, that the electricity which occasioned his injury came from one or both of the high-powered wires of the defendant company and that it could only have come from these wires if not insulated or not properly insulated. This may be accepted as a fact. To say that the doctrine of So-bolovitz v Lubric Oil Company, 107 Oh St 204, is applicable, is in our judgment, not justified.

Under the first assignment the contributory negligence of plaintiff is also urged.

This is a substantial question upon which reasonable minds might differ. We would not be disposed to disturb the verdict of the jury had it found that the plaintiff was contributorily negligent. However, we cannot say as a matter in law that this is true, nor are we required to say that the verdict should be set aside because it is manifestly against the weight of the evidence on the question of plaintiff's contributory negligence.

Plaintiff testifies that he carefully looked to see if the telephone wire was on or across the defendant's wires at the time that he made the splice of this wire and the new telephone wire. There is some uncertainty whether, after he had climbed the telephone pole to the west, he looked to determine if there was contact of the telephone wire with the high tension wire, but if he did, it may be that his vision was impaired by the tree which stood at the west side of the intersection of McKaig Avenue and Ash Street or that as he took hold of the wire it was lowered a bit. Plaintiff says that the telephone wire was clear when he took hold of it. Then, too, the jury may have found that the telephone wire lying upon either or both primary wires of defendant company, if they had

been properly insulated, would not have caused the electric energy to move through the telephone wire. This would be true under the definition of insulation, viz.—a covering to prevent the transfer of electricity.

The situation presented is analogous to that found in Holden v Cincinnati Gas & Electric Company, supra, where the plaintiff was working with pruning shears in a tree through which he knew there passed high voltage electric wires. The court commented on the fact that it may have been difficult for him to have seen the wires from his position in the tree, combined with his difficulty in lowering the shears from his position. Likewise in Miamisburg v Blackburn, supra. The plaintiff there knew of the presence of the high-powered wires and that they carried 2300 volts and that if he touched them he was in danger. Notwithstanding this knowledge, he did touch the wires. In this case we held that his contributory negligence was a question for the jury.

The next assignment is directed to the charge of the court. An examination of the charge discloses that the court did not specifically state the allegations of negligence nor define in detail the issues arising therefrom, but said to the jury that the claim of the plaintiff was that he suffered his injuries because of the negligence of the defendant company in not properly maintaining and protecting its transmission lines in the particulars set out in the petition "which has already been read to you and which you will have in your jury room".

The court then states that the allegations of the petition are denied, defines negligence, burden of proof, proximate cause, etc., and properly set forth the obligations of the plaintiff as to his proof and charged carefully, completely and correctly on the subject of his contributory negligence. Both plaintiff and defendant excepted to each and every paragraph and proposition of the charge but no request was made by the defendant for any more complete charge or any further

charge upon any specific issue, nor was request made that any of the specifications of negligence be withdrawn from the jury.

The issues in this case were simple. It is a little difficult to state all the facts because of the necessity of defining the location of the poles and equipment of the telephone company and defendant company, the streets and trees, but when gotten in mind, as they certainly would have been by the jury after a complete trial, they are not such as required extended specific comment by the trial judge. The issues were clear cut and well defined.

We have again examined the cited decisions of our Supreme Court in the B. & O. Ry Company v Lockwood, 72 Oh St 586, Telinde v Ohio Traction Company, 109 Oh St 125, Simco v Miller, 133 Oh St 345, Farm Bureau v Wagner, 24 Oh Ap 466, Henkel and Sullivan v Robinson, 27 Oh Ap 341, Souder v Hassenfeldt, Admrx., 48 Oh Ap 377.

The charge in this case is not subject to the objection that it was made up of abstract propositions of the law not related to the issues as is found in some of the cited cases, notably, Henkle & Sullivan v Robinson, supra, and Souder v Hassenfeldt, supra. In Simco v Miller, supra, the court in the general charge had failed to charge at all upon the burden of proof upon the issue of the plaintiff's contributory negligence, although, it was a subject of much controversy in the trial.

In Railroad v Lockwood, supra, an examination of the charge will disclose that it was not as complete as the charge in the instant case on the questions which the jury had to determine. The specifications of negligence varied widely in their application to the facts and were such that they could not be comprehended under one simple question. The court in this cited case also found that the trial judge had refused upon a request of the defendant to charge the jury that it should not consider any other negligence than that charged in the petition and stated that there were several other errors appearing in the charge.

In Telinde v Ohio Traction Company, 109 Oh St 125, the court failed to define negligence, contributory negligence, proximate cause, measure of damages or the elements of recovery.

In Souder v Hassenfeldt, Admrx., supra, the particulars wherein the general charge violated the rule stated do not appear except in the general observation that the statements were abstract rather than concrete propositions of law and in Henkle & Sullivan v Robinson, supra, it would appear that all the court did was to read the pleadings to the jury and say that the affirmance upon the one hand and denial upon the other made the issues of fact without more. From these facts in the foregoing cases arose the pronouncements of law stated therein. In all instances they were clearly errors of commission.

"If a charge is correct so far as it goes, the omission of some matter which should have been included does not constitute reversible error unless the omission was called to the attention of the court by counsel and the instruction in question requested, except in cases where the jury would likely be misled by the charge as given."

Beeler v Ponting 116 Oh St 432.
Norris v Jones, 110 Oh St 598.
State v Driscoll, 106 Oh St 33.
Ry. Co. v Ritter, 67 Oh St 53.
Adams v Foley, 36 Oh Ap 295.
Hornbeck & Adams Trial & Appellate Practice, §106.

We do not find that there was any prejudicial error of omission in the general charge of the court as given.

The final assignment of error is that the judgment is excessive, resulting from passion and prejudice and is against the weight of the evidence.

We have carefully read the bill of exceptions and every line thereof. There is nothing in the evidence, in the conduct of counsel nor in the observations of the court which indicate improper conduct, heat or passion or which

would tend to inflame the jury or disturb its balance.

Plaintiff, at the time of his injury, was a young man of fine physical stature, sound in mind, body and limb. He had several years' experience in his profession. As a result of the electrical burns he was hospitalized for a greater portion of a year, was unable to feed or take care of himself in any way. During that period of time, he was required, prior to amputation of his fingers, to hold his hands in a Dakin solution which caused him extreme pain. His index and third fingers on the left hand, the thumb, index and third fingers on the right hand and the bottom of the right foot were burned by the electrical contact. Sometime after he was taken to the hospital in Troy, his right thumb and the first joint of the second finger were amputated. After this operation the hands were bandaged, the nerves were raw and exposed at the ends of the stumps and the handling and treatment of these wounds was painful in the extreme.

After several months of convalescence he was removed to Cleveland, soon went into St. John's Hospital and there was subjected to reamputation of the right thumb. A portion of the bone was removed so as to form a new pad over the remainder of the stump. It was testified by the attending surgeon that the bone was protruding, that there was no pad over it. He was very nervous and subject to periods of marked depression of spirit.

It is true that within about a year and three months the plaintiff returned to work and at the time of the trial was earning more than he was at the time of his injury.

We are satisfied that the nature of the injury, the fact that the plaintiff will be disfigured for life, the resultant embarrassment, the nervous condition which resulted from his injury, the loss of earnings and impairment of earning capacity are such that the verdict cannot be said to be excessive.

It is urged that inasmuch as plaintiff was earning more at the time of the trial than when injured that his earning capacity has not been impaired. The nature of his work during the time that he has been employed was such that it was not especially remunerative and in part was uncertain and not especially desirable. Upon careful consideration of all the errors assigned, we find none occurring which prejudiced the substantial rights of the defendant.

The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.