HALL, ADMX., APPELLANT, *v.* LORAIN-MEDINA RURAL ELECTRIC CO-OPERATIVE, INC., APPELLEE.*

---

*Motion to certify the record overruled, October 9, 1957.

(No. 1379—Decided April 17, 1957.)

*Mr. Warren M. Briggs* and *Mr. A. H. Dudnik,* for appellant.
*Mr. R. H. Rice* and *Mr. Harrison L. Comstock,* for appellee.

HUNSICKER, P. J. This is an appeal on questions of law from a judgment on a directed verdict granted by the Common Pleas Court of Lorain County at the conclusion of the evidence in behalf of the plaintiff, Phyllis J. Hall, as administratrix of the estate of Robert L. Hall, deceased.

On July 10, 1952, Robert Hall, the plaintiff's decedent, was killed when a high voltage of electricity passed through his body.

Robert Hall and two other men were preparing to service an oil well on lands belonging to one Long, the owner of such oil well. The act they were preparing to do consisted of pulling from the well the "sucker rod," to which was attached fabric cups used in bringing oil out of the well. In order to do this work, a motor truck, with a boom or derrick, was driven to a point near the well. This boom was then centered over the well, preparatory to pulling the rod. Two men, by means of guy wires, assisted the operator of a motor-driven winch attached to the truck to center the boom.

Robert Hall was one of the men helping to center the boom. He was standing on the Long property, at the time of his death, holding one of the guy wires. The boom came into contact with a high tension wire, causing Hall and the other two men to be almost instantly killed. This was an uninsulated wire, approximately 25 feet above ground and 23 feet south of the Long oil well. This wire passed over land owned by one Buchanan, and did not pass over the Long property.

The well was drilled in 1919 and required (two or three times a year, as all wells do) certain service to the pipe, sucker rod or fabric cups. The electric wire was strung along the line, some 23 feet south of the Long property, in 1939, and in 1948

became the property of the appellee, whom we shall hereinafter call the Electric Company.

There were no warning signs showing that the wire carried a high voltage of electricity, although there was, on a pole about 110 feet from the point of contact with the boom, a large transformer and large insulators to which the wires were attached. The high-tension wire was also larger in diameter than telephone wire.

Robert Hall had never serviced this well before, and, so far as the record shows, was never on the land near or about this oil well before the date of his death.

From the judgment rendered on the directed verdict, the plaintiff appeals to this court.

The plaintiff, in her petition, said that the company was careless and negligent in erecting the high voltage wire at a point near the oil well, when it knew or in the exercise of due care should have known that the oil well would be serviced by means of a derrick and boom which would likely come into contact with the wire; in failing to insulate the wire; in failing to warn that the wire was carrying high-voltage electricity; and in failing to maintain this wire at a proper clearance above the ground.

In our consideration of this case, we must remember that: Robert Hall, the deceased, was on the Long property to service the Long oil well; the high-voltage wire was on the Buchanan property 23 feet from the oil well; the contact with the wire that caused death was the act of fellow employees; and the Electric Company committed no act except to maintain its wire where it had a legal right to keep it. The Long well was about 200 feet from one public road and 270 feet from another public road.

What, if any, duty did the Electric Company owe to Robert Hall under the circumstances of this case?

The lands surrounding the Long oil well were open and not fenced; it was difficult to quickly ascertain whether one was on the Long lands or on lands of one or another of the abutting owners. It is clear, however, that Hall, himself, did not trespass on the Buchanan lands, and he was, at all of the time set out herein, 60 feet or more from the power line. The act of moving onto the Buchanan land was done by a fellow worker.

The act by which the boom came into contact with the power line was the act of a fellow worker.

The nature of the right-of-way easement which permitted the Electric Company to maintain its power line over the Buchanan property is not disclosed in the bill of exceptions. We are assuming from the stipulation of the parties that it is only a right to erect and maintain the power line, and not any other interest in the land beneath the overhead wires. In the exercise of control over this high-voltage wire, the Electric Company had a right to expect that other persons would not come onto the lands of Buchanan and place some object against this wire.

The principal claim of negligence charged against the Electric Company, and relied on by the appellant, is that of placing in operation its power line so close to the Long oil well when it knew, or should have known, there was danger of contact between the boom used in servicing an oil well and such power line.

This claim is based upon the assertion that, when the power line was placed at its present location, after the oil well was drilled and in active use, the Electric Company should have foreseen the probability of injury to those who of necessity were required to service that well in order to keep it in good repair and productive use.

The exhibits introduced in evidence and the oral testimony show that there was at least one other way of approaching this well. This way to the well would be from north of the well and permit the boom to be raised and lowered without danger of coming into contact with the wire. There was some testimony showing that this was the way the well had been serviced on all previous occasions.

Certainly, when considering the matter of foreseeability, it is equally proper to question whether the Electric Company is to be charged with responsibility in the premises where, since there are two locations to service the well, one dangerous and the other not dangerous, those doing this work choose the dangerous location.

We do not disagree with the rule announced in *Ohio Power Co.* v. *Beck,* 51 Ohio App., 156, 199 N. E., 860; *Hetrick, Admx.,* v. *Marion-Reserve Power Co.,* 141 Ohio St., 347, 48 N. E. (2d), 103;

and *Jacques, Admx.,* v. *Dayton Power & Light Co.,* 80 Ohio App., 258, 74 N. E. (2d), 211; which rule is to the effect that an electric power company is under a duty to see that the electric current is safely conducted over premises upon which it maintains its wires, so as not to endanger the occupants or users of such premises or those rightfully thereon.

The Electric Company is certainly liable for its negligence, but it is not an insurer of the safety of those who are injured by coming into contact with its wires. See: 29 Corpus Juris Secundum, Electricity, Section 38.

"The question whether one may escape liability for injuries inflicted upon the ground that the person injured is a trespasser as to a third party, especially in the case of high-tension wires maintained over private property, is one upon which there is a sharp conflict of authority. The weight of authority holds, in line with the principle that the foundation of liability is the reasonable anticipation of the presence of a party, that one maintaining an instrument so insidiously deadly as an uninsulated high-tension power line, in a place where people may be expected to be imperiled by it, ought not to be permitted to escape liability for injury actually inflicted because the injured person was a trespasser or mere licensee so far as the property owner was concerned. Other cases take the view that if the injured person was a trespasser or licensee with respect to the property owner, he may not maintain an action against the electric company." 18 American Jurisprudence, Electricity, Section 67.

See also: 29 Corpus Juris Secundum, Electricity, Section 43; 14 A. L. R., 1023 *et seq.*; 56 A. L. R., 1021 *et seq.*

The Ohio rule, with respect to the liability of a power company under facts similar to those set out herein, seems to have been established by the case of *Soles, Admr.,* v. *Ohio Edison Co.,* 144 Ohio St., 373, 59 N. E. (2d), 138, wherein the court said:

"1. An occupier of land, either as lessee, tenant or by sufferance, owes no duty to a trespasser or licensee upon such land except to refrain from wanton, willful or reckless misconduct which is likely to injure him.

"2. Where a power company, upon request of a municipality, furnishes electric service at an airport operated by such

municipality, and as a part of the equipment to furnish service installs a transformer within a walled enclosure upon the airport property, without a lease or rental agreement for the land within such enclosure but with the knowledge and acquiescence of the municipality, the power company is the occupier of such land by sufferance and is entitled to the same rights as the landowner, as against a trespasser within the enclosure.

"3. Where a youth (about 19 years of age), in traveling along a path through such airport property, leaves the beaten path and enters the enclosure above described, one wall of which is down, he thereby becomes a trespasser as against the power company; and if, while so trespassing, he comes in contact with the transformer carrying a high voltage of electricity and is electrocuted, the power company is not liable in damages for his death, in the absence of proof that the company was guilty of wanton, willful or reckless misconduct."

We must remember that, in the instant case, we do not have a situation where a person is compelled to work under or near high tension lines, such as in the following cases: *City of Miamisburg* v. *Blackburn,* 16 Ohio Law Abs., 38; *Holden* v. *Cincinnati Gas & Elec. Co.,* 57 Ohio App., 448, 14 N. E. (2d), 943; *Coyne* v. *City of Troy,* 34 Ohio Law Abs., 57, 36 N. E. (2d), 285.

Our problem is not like those cases where a television antenna is being erected near a high-tension wire known to be such by the one seeking damages, as in *Northern Indiana Public Service Co.* v. *Howard, Admx.,* 139 N. E. (2d), 558, *Johnson* v. *Johnson City* (Tenn. App.), 292 S. W. (2d), 794, and *Royal Indemnity Co.* v. *Pittsfield Elec. Co.,* 293 Mass., 4, 199 N. E., 69.

There is, however, some similarity of the antenna cases to the instant case, since in each case the injured person was on lands where he had a right to be, and there was contact with the high-tension wire outside the boundary of such land.

Our problem here raises the question of the legal duty of the Electric Company to those who, in the normal course of events, came to the Long oil well to service that oil well; and whether the Electric Company could reasonably foresee that injuries, from contact with the high-tension wire, might result to the workmen while servicing the oil well.

Was it reasonable to expect that the oil well workers would come into contact with these wires?

We think that the law does not require a person who maintains a high-voltage electric wire, under the conditions found in this case, to anticipate at his peril every possible circumstance under which some person might make contact with this wire.

No danger existed in the condition under which this high-voltage line was constructed, 23 feet from the oil well and 25 feet above the ground; and where an injury is made possible, as in this case, by the happening of an independent and unrelated cause, the proximity of the high-voltage wire cannot be the proximate cause of the injury.

We therefore determine herein that the Electric Company was not required to guard against that which a reasonably prudent person under the circumstances would not anticipate as likely to happen.

The judgment must be affirmed.

*Judgment affirmed.*

Doyle and Stevens, JJ., concur.