GRABILL, Appellant,

v.

WORTHINGTON INDUSTRIES, INC. et al., Appellees.

TITUS, Admr., Appellant,

v.

COLUMBUS SOUTHERN POWER COMPANY et al., Appellees.*

CLAYTOR, Appellant,

v.

WORTHINGTON INDUSTRIES, INC. et al., Appellees.*

Thomas MOORE et al., Appellants,

v.

COLUMBUS SOUTHERN POWER COMPANY et al., Appellees.*

[Cite as *Grabill v. Worthington Industries, Inc.* (1994), 98 Ohio App.3d 739.]

Court of Appeals of Ohio,
Franklin County.

Nos. 94APE04–595, 94APE05–636, 94APE05–668 and 94APE05–702.

Decided Nov. 17, 1994.

*Butler, Cincione, DiCuccio & Dritz, Matthew P. Cincione* and *Stanley B. Dritz,* for appellant Jeffrey L. Grabill.

*Hamilton, Kramer, Myers & Cheek* and *Austin P. Wildman,* for appellee Worthington Industries, Inc.

*Michael F. Colley Co., L.P.A.,* and *Daniel N. Abraham,* for appellant Patricia L. Titus, individually and as the administrator of the Estate of Terry L. Titus, deceased.

*Porter, Wright, Morris & Arthur* and *Joseph W. Ryan, Jr.,* for appellee Columbus Southern Power Co.

*McCarthy, Palmer, Volkema, Boyd & Thomas* and *Jeffrey D. Boyd,* for appellant Ellen J. Claytor.

*Spangenberg, Shibley, Traci, Lancione & Liber, John G. Lancione, Robert V. Traci* and *John R. Liber II,* for appellants Thomas Moore et al.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeals of Thomas and Sharry Moore, Willard and Adeline Tackett, Patricia L. Titus, Administrator, Ellen J. Claytor, Administrator, and Jeffrey L. Grabill, appellants, from the April 9, 1993 decision and May 4, 1993 entry granting summary judgment in favor of appellees, Columbus Southern Power Company ("CSP") and American Electric Power Company, Inc. ("AEP"). On appeal, we find that the assignments of error set forth by each appellant are interrelated in that all of the appellants argue that summary judgment was improper.

The history of this case is as follows: On September 25, 1989, Terry L. Titus, Howard Claytor and Gregory Donohew were electrocuted when the scaffolding that they were moving came in contact with a transmission line owned, operated and maintained by CSP and AEP.[1] Willard Tackett, Thomas Moore and Jeffrey Grabill were also seriously injured. Several lawsuits were filed against CSP and AEP as a result. Through an agreement of the parties, the cases were consolidated by entry dated December 2, 1991. CSP and AEP, appellees, moved for summary judgment and, on May 4, 1993, a judgment entry was filed which granted appellees' motion and dismissed CSP and AEP with prejudice. Each of the appellants filed a notice of appeal to this court. On appeal, the appeals of the parties in case Nos. 94APE05–668, 94APE04–595 and 94APE05–636 were consolidated with case No. 94APE05–702.

In granting summary judgment in favor of appellees, the trial court focused on the foreseeability of this accident and whether or not the appellees could have "reasonably anticipated" the injuries which resulted when the scaffolding came into contact with a high voltage line of 69,000 volts. The court found that reasonable minds could only conclude that appellees could not have foreseen this accident. Specifically, the court found that the power lines in question were located approximately thirty feet east of the east wall of the warehouse. It further found that there was no evidence in the record to indicate that appellees' acts or omissions actually placed appellants in danger of coming into contact with the power lines.

---

1. Appellees argue that AEP is not a proper party to this action, and that AEP and CSP are separate entities. However, for purposes of this appeal, appellees acknowledge that the arguments set forth on behalf of CSP would also apply to AEP. Thus, for purposes of this opinion, we will address these arguments as though they pertained to both CSP and AEP. On remand, the trial court may consider evidence on the issue of the relationship between CSP/AEP and whether or not AEP is a proper party.

In reviewing this case, we are mindful that summary judgment is proper when reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in its favor. Civ.R. 56(C); *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 103, 590 N.E.2d 421, 424. Thus, appellees must demonstrate that reasonable minds could only conclude that appellees met the requisite standard of care, and that the accident in question was unusual and unforeseeable, and was not within the range of reasonable probability. *Brauning v. Cincinnati Gas & Elec. Co.* (1989), 54 Ohio App.3d 38, 560 N.E.2d 811.

Appellants, on the other hand, must produce evidence for any issue for which they would bear the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. This court has adopted the rationale in *Wing* and, therefore, appellants must affirmatively demonstrate the facts which would entitle them to relief. *Baughn v. Reynoldsburg* (1992), 78 Ohio App.3d 561, 605 N.E.2d 478. In a negligence case, such as this, appellants must affirmatively demonstrate that appellees owed them a duty, requiring appellees to conform their conduct to a certain standard, that this duty was breached, and that such breach was the proximate cause of appellants' injuries. *Brauning, supra.*

The parties agree that the applicable standard of care has been set forth in *Hetrick v. Marion–Reserve Power Co.* (1943), 141 Ohio St. 347, 25 O.O. 467, 48 N.E.2d 103, as follows:

"A power company erecting and maintaining * * * poles and wires, * * * for the purpose of transmitting and distributing electrical current, *is bound to exercise the highest degree of care* consistent with the practical operation of such * * * and *is responsible for any conduct falling short of that standard.*" (Emphasis added.) *Id.* at paragraph two of the syllabus.

Thus, we must determine if reasonable minds could *only* conclude that appellees exercised the highest degree of care.

Appellees cite several cases wherein the National Electric Safety Code ("NESC") appears to be the standard of care used by the courts to determine whether or not a utility company exercised the "highest degree of care." Clearly, compliance with the NESC was a significant factor in the court's decision in *Hetrick.* See, also, *Otte v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 523 N.E.2d 835. However, several courts have also found that compliance with the NESC is not necessarily dispositive of the issue of whether an electric company exercised the highest degree of care. *Brauning, supra; Fortman v. Dayton Power & Light Co.* (1992), 80 Ohio App.3d 525, 609 N.E.2d 1296.

■ We agree with the reasoning of several courts of this state, in that we do not find compliance with the NESC dispositive of the issue of liability. As the *Brauning* court noted, foreseeability of the occurrence was also important in determining whether or not liability existed. Thus, even if an electric company complied with the NESC, if the plaintiff was injured and the injury could have been anticipated with a reasonable degree of probability, the utility company could be held liable. *Brauning, supra,* 54 Ohio App.3d at 42–43, 560 N.E.2d at 815–816. Similarly, the court in *Fortman, supra,* stated that:

" * * * Cases subsequent to *Hetrick* have held or noted in *dicta* that the utility may be negligent even though it complies with the NESC, where an injury might have been anticipated with a reasonable degree of probability." (Citations omitted.) *Id.,* 80 Ohio App.3d at 530, 609 N.E.2d at 1299.

■ Appellees also argue that the NESC standards are suspended during construction and that the ten-foot rule found in Section 1926, Title 29, C.F.R. and Ohio Adm.Code 4121:1–3–07(E) applies. We would note that Section 1926, Title 29, C.F.R. falls under the title of "Labor" and Ohio Adm.Code 4121:1–3–07(E) is a workers' compensation statute, specifically pertaining to a VSSR (Violation of a Specific Safety Requirement). Both of these sections appear to discuss the employer/employee relationship and the obligations and responsibilities that arise out of that relationship in working close to a transmission line. In the instant action, AEP/CSP is not the employer of appellants, and, accordingly, we do not find these sections dispositive of the issue of appellees' liability.

■ Thus, regardless of which standard applies, the thirty-foot standard of the NESC, or the ten-foot rule as argued by appellees, compliance with these measurements alone is not dispositive of the issue of whether or not appellees exercised the highest degree of care. We are not convinced that reasonable minds could *only* conclude that appellees exercised the highest degree of care. Moreover, we must also consider the question of whether this occurrence was so unusual that it could not fairly have been anticipated or foreseen. *Hetrick* posed this question: "This * * * brings us to a consideration of the question whether the *defendant was negligent in failing to ·reasonably anticipate* such a result." *Id.,* 141 Ohio St. at 358, 25 O.O. at 472, 48 N.E.2d at 108. The court, in *Hetrick,* then went on to define "reasonable anticipation" as follows:

"In 1 Shearman and Redfield on Negligence (Rev.Ed.), 50, Section 24, in discussing the doctrine of reasonable anticipation, it is said:

" 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or

should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers.'" *Id.*, 141 Ohio St. at 358–359, 25 O.O. at 472, 48 N.E.2d at 108–109.

Thus, if it is shown that CSP and AEP could have reasonably anticipated this accident, and the resulting injuries, their failure to take appropriate measures could constitute negligence. We cannot find that reasonable minds could only conclude that there was no danger to be apprehended. The fact that a 69,000–volt wire was a mere thirty feet from a construction site, and that scaffolding equipment would be used at that construction site could lead reasonable minds to conclude that the given circumstances were suggestive of danger, and that failure to take appropriate measures constituted negligence. Clearly, CSP and AEP recognized the potential danger, as the line in question was de-energized when the AEP/CSP crew worked on a pole at that location.

A review of the depositions filed in this case also makes it clear that CSP and AEP had knowledge of this construction site and its proximity to the 69,000–volt line. Jeff Starling, Worthington Industries' assigned project manager for this construction project, testified that CSP reviewed the proposed location of the building and the proposed location of the driveway, which required the removal of the guy wire. John Lenz, a former Senior Power Engineer for CSP, testified that Worthington Industries intended to build a large warehouse adjacent to the transmission lines in question. He further testified that he knew that the building was encroaching on CSP/AEP's easement, and that people would be around the transmission lines. Donald Lowry, CSP's civil engineering superintendent, testified that he was also aware that the building, as proposed, would approach into CSP's easement area, and he suggested to Lenz that the building should be moved farther away from the transmission line.

Furthermore, there was testimony from CSP's employees that demonstrates their belief that one could foresee that this kind of equipment would be on the premises of the construction site. Thomas Kirkpatrick, a manager of electrical engineering for CSP, specifically testified that one could "anticipate that there would be equipment on a construction site that could reach to the heights necessary to get into a line * * *." Lowry admitted that he was aware of the

possible presence of scaffolding and equipment passing near or around or under the transmission lines during the time the warehouse would be constructed. Appellants' experts also testified that it was foreseeable that this kind of equipment, *i.e.*, scaffolding, would be used at a construction site.

It is undisputed that appellees failed to take any measures such as hanging streamers on the lines, placing a mesh fence beneath the power lines, de-energizing the wires, or moving or marking their wires in some way. Accordingly, we find that reasonable minds could differ as to whether or not AEP/CSP's failure to take appropriate measures constituted negligence, and whether or not the injuries in this case could have been reasonably anticipated.

■ Additionally, we find appellees' arguments with respect to whether or not the wires were "open and obvious," and whether or not alternatives were available to appellants, *i.e.*, lowering the scaffolding, are primarily questions of comparative negligence. The fact that the wires were allegedly "open and obvious," even if a factor in assessing whether appellees could reasonably anticipate the injuries in this action, is not determinative for the purposes of summary judgment. See *Lazar v. Cleveland Elec. Illum. Co.* (1975), 43 Ohio St.2d 131, 72 O.O.2d 74, 331 N.E.2d 424; *Jacques v. Dayton Power & Light Co.* (1947), 80 Ohio App. 258, 35 O.O. 558, 74 N.E.2d 211. Furthermore, the question of appellants' negligence is one for the jury. *Lazar, supra.* As stated in *Lazar, supra:*

"Whether a person injured by electric current by coming into direct or indirect contact with electric wires suspended over highways or lands is contributorily negligent is a question for the jury." *Id.* at paragraph four of the syllabus.

The court in *Jacques* further stated that:

"We cannot support the claim that the knowledge of the presence of suspended wires in and of itself was sufficient to charge plaintiff's decedent with the further knowledge that they were dangerous instrumentalities and charged with a high voltage of electrical energy." *Id.*, 80 Ohio App. at 266, 35 O.O. at 561, 74 N.E.2d at 215.

Appellees cite *Bates v. Cleveland Elec. Illum. Co.* (App.1961), 85 Ohio Law Abs. 345, 171 N.E.2d 548, and *Hall v. Lorain–Medina Rural Elec. Co–Operative, Inc.* (1957), 104 Ohio App. 278, 4 O.O.2d 417, 148 N.E.2d 232, for the proposition that alternatives were available to appellants, and that, therefore, appellees were entitled to summary judgment. In *Bates,* the court found that the injury was not foreseeable, and further found that the smokestack parts could have been moved to an area away from the electric lines. As previously discussed, this court has found that reasonable minds could reach differing conclusions as to the foreseeability of the injuries in this case. Furthermore, the construction in this case

involved an immovable building. Based upon those facts, we find *Bates* to be distinguishable from the instant action. We also find *Hall, supra,* to be distinguishable. As the court noted in that case:

"We must remember that, in the instant case, we do not have a situation where a person is compelled to work under or near high tension lines * * *." *Id.,* 104 Ohio App. at 283, 4 O.O.2d at 420, 148 N.E.2d at 235.

In the instant action, there was testimony to demonstrate that construction of an immovable building was going on close to these wires and that employees of CSP were able to foresee that construction equipment would be utilized around, near, or under these wires. Again, whether or not appellants had alternatives available to them, and whether or not their failure to use such alternatives makes them negligent, and to what extent, is a question for the jury. *Jacques, supra.*

For all of the above reasons, we find that reasonable minds could differ as to whether or not appellees exercised the highest degree of care and whether or not this occurrence was so unusual that it could not fairly have been anticipated or foreseen. Accordingly, we sustain the assignments of error to the extent that we find that summary judgment was improper, and this matter is hereby reversed and remanded to the trial court for further proceedings consistent with this opinion.

Appellees' motion to strike portions of appellants' briefs, in that matters *dehors* the record are contained therein, is sustained. On remand, appellants are free to file the deposition testimony of Harley Amick, Gerald Hoffman, Delmer Norris, and Thomas Watkins, in order to make this testimony part of the record. The parties are to bear their respective court costs.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT and TYACK, JJ., concur.