622 P.2d 493

**Bob R. MASON, Plaintiff-Appellee,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona Corporation; and Foxworth-Galbraith Lumber Company, a Delaware Corporation, Defendants-Appellants.**

**No. 1 CA–CIV 4338.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 30, 1980.

Rehearing Denied Dec. 9, 1980.

Review Denied Jan. 13, 1981.

Langerman, Begam, Lewis, Leonard & Marks by Samuel Langerman and Noel A. Fidel, Phoenix, for plaintiff-appellee.

Snell & Wilmer by Warren E. Platt, William H. Douglas, John J. Bouma, Phoenix, for defendant-appellant Arizona Public Service Co.

Mariscal, Weeks, McIntyre & Friedlander, P. A., by Gary Birnbaum, and Streich, Lang, Weeks & Cardon, A Professional Ass'n by William S. Hawgood, II, Phoenix, for appellant Foxworth-Galbraith Lumber Co.

## OPINION

OGG, Chief Judge.

In this appeal we must consider what duty a landowner has to insure the safety of workers at a construction site. We also must consider what duty an electric power company has to take precautions to protect workers at a construction site when it can be reasonably anticipated that persons may be endangered by its power lines.

The appellee, Bob R. Mason, brought an action against the appellants, Arizona Public Service Company (APS) and Foxworth-Galbraith Lumber Company, for damages he suffered while he was employed in the construction of a new building for Foxworth-Galbraith when a piece of metal flashing he was handling came into contact with an electricity distribution line owned and maintained by APS. Appellee recovered a jury verdict of $425,000 against both appellants. Both appellants have appealed, urging diverse contentions.

We must view the evidence and the inferences to be drawn therefrom in the light most favorable to sustaining the verdict and judgment of the trial court. *Lane Title and Trust Co. v. Brannan*, 103 Ariz. 272, 440 P.2d 105 (1968).

The facts considered in the light most favorable to upholding the jury verdict are as follows. For many years, Foxworth-Galbraith has operated a lumber business in the city of Eloy. In 1972, it decided to erect a second building on its property for the storage of lumber. Sometime prior to August 1972, it entered into a contract with Flynn Steel Building Company whereby Flynn was to supply materials and labor to construct the new building. The new building was to be a prefabricated metal structure.

Foxworth-Galbraith determined the site of the building and entered into a contract with Charles Jackson, an Eloy contractor, to install the foundation and footings for the new building. The new building was located adjacent to the existing Foxworth-Galbraith building in such a manner that the south walls of both of the buildings were to be in alignment. 5th Street, a public street of the city of Eloy, is adjacent to the south of the property owned by Foxworth-Galbraith. APS owns an easement on the north of 5th Street and immediately to the south of the Foxworth-Galbraith property. The electricity distribution line in question was located within this easement, over 23 feet above the ground. The line was uninsulated and carried 7200 volts of electricity. It ran, like the south wall of the existing building, the projected building and 5th Street, in an east-west direction.

The south wall of the building was 60 feet in width and 16 feet in height at its east and west ends. It rose to 18½ feet in the middle, at the peak of the roof. The expert witness called by appellant testified that, measured from the south end of the peak of the roof, there was a "vertical clearance" of 4 feet 11½ inches and a "horizontal clearance" of 2 feet 1¾ inches from the building to the APS electric line. Clearances prescribed by the National Electrical Safety Code with which APS is required to comply by regulation of the Corporation Commission are 8 feet vertically and 3 feet horizontally between electrical line and structure. In contrast to appellee's expert witness, an APS employee testified that its 5th Street line was in conformity with these prescribed clearances.

Appellee Mason was employed by Flynn Steel Building Company, which is not a party to this particular litigation. Flynn commenced working on the project on October 2, 1972 after Charles Jackson had completed the foundation and footings. Erection of the prefabricated building was swift, and the structure was in the final stages of completion on October 10 when the subject accident occurred. Appellee was near the south edge of the roof, to the west of the peak, engaged in the task of receiving strips of flashing from the ground and affixing them to the south wall and roof. Just before the accident, appellee was kneeling near the south edge of the roof, and the 10 foot strips of metal flashing were being passed up to him by a co-worker. After coming into possession of one of the strips, appellee swung it around in the air for proper placement, and in the course of this swinging the strip came into contact with the power line. The electricity was grounded through appellee's knees and he fell to the ground. This litigation followed.

Additional facts will be referred to in connection with the discussion of the differing contentions made by the parties on appeal.

## THE APPEAL OF
## FOXWORTH–GALBRAITH

Appellee's theory of liability on the part of Foxworth-Galbraith is predicated upon evidence that it was customary in the construction industry for a general contractor, or the owner if there was no general contractor, to conduct an inspection of the property at the beginning of a construction project and to eliminate or minimize hazards such as that presented by the power transmission line in the present case. Appellee contends that the duty established by this custom applies to Foxworth-Galbraith because although Flynn Steel Building Company sometimes undertook to act as a general contractor for a fee in addition to the sum paid for furnishing labor and materials in the construction of the building, it was not so engaged by Foxworth-Galbraith. The only legal authority cited by appellee in connection with the liability of Foxworth-Galbraith is the *Restatement (Second) of Torts*, § 414 (1965), which states:

§ 414.   Negligence in Exercising Control

Retained by Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

■   Retention of a measure of control over the manner in which the work is done is prerequisite to the rule of liability stated in § 414. *Comment c* to the section states:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

A retention of some measure of control over *the premises is not a sufficient predicate for* liability under the rule of liability stated in § 414. As Division Two stated in the case of *Citizen's Utility, Inc. v. Livingston*, 21 Ariz.App. 48, 52, 515 P.2d 345, 349 (1973):

§ 414 has nothing to do with control over the *premises* but applies only to control or supervision over *the work* being performed by the independent contractor. (Emphasis in original)

■   There is no evidence nor any contention in the present case that Foxworth-Galbraith retained any control over the manner in which Flynn Steel Building Company did its work. Accordingly, liability cannot be predicated upon § 414 of the *Restatement (Second) of Torts.*

■   In order for a custom to define the relevant duty, it must be shown that the defendant either knew of the custom, or that he should have known of it. Prosser states the principle as follows:

A custom, to be relevant, must be reasonably brought home to the actor's locality, and must be so general, or so well known, that the actor may be charged with knowledge of it or with negligent ignorance.

Prosser, *Law of Torts*, 168 (4th ed. 1971). *Accord: American Smelting and Refining Company v. Wusich*, 92 Ariz. 159, 375 P.2d 364 (1962).

■   The evidence presented by appellee as to custom generally referred to a custom or practice *recognized within the construc*tion industry. Appellee has not called our attention to any evidence indicating that Foxworth-Galbraith knew of the custom or practice, or that the custom or practice was so widely recognized that Foxworth-Galbraith should have known of it, nor have we found any such evidence. In the absence thereof, we do not need to determine whether an industry custom may form the basis of actionable negligence.

■   No contractual basis for liability is asserted. It is apparent from a review of the contract between Foxworth-Galbraith and Flynn Steel Building Company that Flynn had total control of the building project. By contrast, Foxworth-Galbraith was excluded from the premises during con-

struction. The duty to provide a safe place to work generally extends no further than the control retained by the contractee. *See Pruett v. Precision Plumbing, Inc.*, 27 Ariz. App. 288, 554 P.2d 655 (1976). Appellee stated at the trial that he considered there was nothing unsafe about his place of work on the day in question.

Generally, in the absence of retained control, the duties owed by a landowner to third persons are not owed to the employees of an independent contractor. *See Parks v. Atkinson*, 19 Ariz.App. 111, 505 P.2d 279 (1973), relying on *Welker v. Kennecott Copper Company*, 1 Ariz.App. 395, 403 P.2d 330 (1965), and *Restatement (Second) of Torts*, §§ 413, 416, 422 and 427. A possessor of land is not liable to invitees in respect to known or obvious dangers, or dangers that he may reasonably expect his invitee to realize and take precautions against. *Restatement (Second) of Torts*, §§ 343 and 343(A). There is no indication that the power line was anything but open and obvious, and appellee testified that he was aware of it and the danger it posed.

We are unable to find that Foxworth-Galbraith owed any duty to the appellee which would provide a basis for liability. The judgment against Foxworth-Galbraith must accordingly be reversed.

Foxworth-Galbraith has also complained of the allegedly improper use of a "Gallagher" type agreement in this case. Since we reverse as to Foxworth-Galbraith, we need not reach this issue.

### THE APPEAL OF ARIZONA PUBLIC SERVICE

Arizona Public Service contends that appellee failed to establish that it had a duty to him, that it breached any duty, and that if it did breach a duty, that any breach was the proximate cause of appellee's injuries.

Appellee sought to show that APS was negligent in several respects. First, appellee presented expert testimony that the nearest of the power distribution lines was closer to an extension of the plane of the south wall and the peak of the roof of the new building than is prescribed by the National Electric Safety Code. Appellee's expert, Dr. Robert Nabours, an electrical engineer, testified that there was a horizontal clearance of 2 feet 1¾ inches and a vertical clearance of 4 feet 11½ inches, and stated further that in his opinion clearances greater than 3 feet and 8 feet were necessary. The National Electric Safety Code, which has been adopted in Arizona, prescribes a minimum clearance of 3 feet horizontally and 8 feet vertically.

Dr. Nabours further testified that APS had not set up any system for inspecting its wires as required by the National Electrical Safety Code, but instead had adopted an informal arrangement under which all of its employees were advised to report potential danger to their superiors. Dr. Nabours stated that the insufficient clearance from the old wood building, which is adjacent to the new building, should have been discovered and remedied long before the accident.

Appellee further argues that APS negligently failed to de-energize the power lines during the construction project.

The evidence established that none of the parties contacted APS concerning the lines prior to the accident. However, James Mulder, the district service manager for APS stationed in Eloy, observed the construction project after its commencement and made two trips to the site while Flynn Steel was erecting the new building. The purpose of these visits was to advise Flynn's foreman that the lines did in fact carry high voltage. Mulder did not see the foreman on either occasion but did talk with an employee of Foxworth-Galbraith. Mulder testified that the 7200 volt line in question was a "back-up" line, not vital to current APS operations, and that it could have been and would have been de-energized at any time at the request of one of the parties. His testimony indicated that de-energization was a simple process, but that APS would not undertake it except at the request of one of the parties.

A distributor of electric power must take precautions commensurate with the

dangers involved whenever it is to be reasonably anticipated that persons may come into contact with its lines. *Kirton v. Williams Electric Co-Op, Inc.*, 265 N.W.2d 702 (N.D.1978); *see also Partin v. Carolina Power and Light Co.*, 40 N.C.App. 630, 253 S.E.2d 605 (1979); and *Perrine v. Pacific Gas and Electric Company*, 186 Cal.App.2d 442, 9 Cal.Rptr. 45 (1960).

A warning alone may not be sufficient. In *Dunnaway v. Duquesne Light Co.*, 423 F.2d 66, 69 (3rd Cir. 1970), the court stated:

The adequacy of a warning in relieving an electric company from liability must depend on both the expected efficacy of the warning and the availability of more effective alternate precautions. Experience has taught that from time to time a crane operator with full knowledge of the danger will bring the boom in contact with overhead wires.

In the present case, as in *Commonwealth Trust Co. of Pittsburgh v. Carnegie-Illinois Steel Co.*, [353 Pa. 150, 44 A.2d 594] the electric company could have taken a simple alternate precaution which would have completely eliminated the danger. Duquesne's Superintendent of Personnel, Transmission, and Distribution testified that the electric line could easily have been de-energized with no resulting strain on the system. We agree with the court below that it was for the jury to decide whether in all of the circumstances precautions short of de-energizing the line met the high standard of care which the law imposed upon Duquesne.

*See Boure v. New Orleans Public Service, Inc.*, 255 So.2d 776 (La.App.1972) (de-energization rather than an offer of de-energization was necessary where the distributor knew a dangerous situation existed.)

Appellant has cited a number of cases in support of its position in respect to its asserted lack of duty in the present case. *See Ferriss v. Chugach Electric Ass'n*, 557 P.2d 763 (Alaska 1976); *Virginia Electric and Power Company v. McCleese*, 206 Va. 127, 141 S.E.2d 755 (1965); *Perrine v. Pacific Gas and Electric Co.*, 186 Cal.App.2d 442, 9 Cal.Rptr. 45 (1960); *Lewis v. Pacific Gas and Electric Co.*, 95 Cal.App.2d 60, 212 P.2d 243 (1950); *Benard v. Vorlander*, 87 Cal. App.2d 436, 197 P.2d 42 (1948); and *Sweatman v. Los Angeles Gas and Electric Corp.*, 101 Cal.App. 318, 281 P. 677 (1929).

In *Sweatman*, the wire in question was 7 feet away from the wall of the building and unlike the APS line here, not in violation of any regulation or ordinance. In *Benard* the wire was 9 feet from the building and was not owned, controlled or maintained by the appellant power company. In *Lewis* the defendant had no notice that a crane or boom as high as a high voltage wire would be used or was customarily used in a sewer construction project.

In the *McCleese* case, the high voltage wires in question were 16 feet above the surface where appellee was working, twice the clearance required by the National Electric Code. Appellee was injured when a long metal "squeegee" he was using came into contact with a line. The court referred to evidence that the "squeegee" would not have been observable to a visitor (i. e., the power company upon reasonable inspection) on any day before the accident.

In *Ferriss*, lack of notice also was a barrier to liability. Plaintiff was injured while he was standing on a canopy constructed at a filling station one day before the injury. The distance from the ground surface to the wire was 20.9 feet; after the canopy was constructed, the clearance was some 6.65 feet. There was no indication that the power distributor had knowledge or should have known of the construction of the canopy. The appellate court declined to hold that construction of the canopy was foreseeable by the defendant.

In *Perrine*, the line was 7 feet 4 inches from the wall where plaintiff was working, and in conformity with all applicable clearance requirements. Plaintiff was injured when a 30 foot reinforcing rod came into contact with the power line. There is no indication in the case that the power company knew of plaintiff's use of reinforcing rods near the wires. The court stated:

The mere fact that the power line is not insulated ... or that the defendant

knows that improvements are being made near his power line . . . does not of itself give rise to liability where, as here, there is no reason to know that equipment used will be in dangerous proximity to the wires.

9 Cal.Rptr. at 49–50, 186 Cal.App.2d 442 (citations omitted).

The *Perrine* court noted that a California criminal statute and a state health regulation proscribed activity within 6 feet of a high voltage wire and thus the power company "may well be said to have safely assumed" that the contractor and his employees would heed the statute. Appellant argues that a similar assumption is available to it in the present case.

The evidence here is critically distinct from any of the cases relied upon by appellant. Here it was observable that the south wall of the new building was generally aligned with the south wall of the existing Foxworth-Galbraith building. It was discoverable upon inspection that appellant's wires were closer than the prescribed clearances in regard to the old building. It was further observable that if the new building was to be of significant height, it would approach appellant's uninsulated high voltage power line. There is no indication that the projected height of the new building was anything but readily available upon inquiry by appellant. It is common knowledge that a construction project ordinarily entails the movement of men and materials about its periphery. The National Electrical Code, in effect, prescribed the zone of danger with its minimum clearances. It was not necessary that the power company should have been able to anticipate the exact or particular injury or the exact or particular manner in which it might occur. *Kirton v. Williams Electric Co-Op, supra.* We think that injury from contact of some nature with a high voltage line located this close to a construction project of which the power company had actual notice was sufficiently foreseeable so that the jury might have concluded that APS was negligent under all of the circumstances in not taking the further precaution of de-energizing the line. Under the legal tests set out above, APS could not discharge its duties by waiting for another party to take the initiative.

The cases upon which appellant relies are all distinguishable in one or more particulars from the combination of circumstances existing in the present case. Here, in contrast to *Perrine, supra*, it could be inferred that materials might be used within the zone of recognized danger. Unlike the situation in *Perrine*, there was no basis for APS to assume that there would not be activity within an area where such activity might not be lawful.

■ We think that the rule quoted in *Perrine* is subject to the qualification that if the lines are located closer to a new structure than the legally defined minimum clearance, and if the distributor has by actual knowledge of the construction project reason to anticipate that the minimum clearance will be violated, then it is immaterial that the distributor does not foresee the use of a particular kind of material or equipment which in effect "extends" the person and results in injury. Under these circumstances, as opposed to those in *Perrine*, it becomes the duty of the distributor to take reasonable precaution in the exercise of due care to avoid injury.

We accordingly conclude that APS did have a duty to appellee and that the jury could have concluded that it breached its duty.

APS argues that no relationship of proximate causation was shown. It emphasizes the absence of direct testimony to the effect that negligence on the part of APS caused appellee's injuries.

■ Proximate cause is a question of fact for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was a proximate cause of the injury. *State Highway Department v. Bechtold*, 105 Ariz. 125, 460 P.2d 179 (1969). Proximate cause may be determined from circumstantial evidence. *Inspiration Consolidated Copper Co. v. Conwell*, 21 Ariz. 480, 190 P. 88 (1920).

**554**

Appellant testified that he was handling the 10 foot strip of flashing at roughly its middle when he turned it and hit the wire. Certainly, if the wire had been de-energized, the injury would not have occurred. This alone is sufficient evidence of proximate causation and renders unnecessary a detailed analysis of the authorities relied upon by appellant. Unlike the case of *West Texas Utilities Co. v. Harris*, 231 S.W.2d 558 (Tex.Civ.App.1950), where the court held that the object would have struck the wire even if a proper clearance had been maintained, the evidence in the present case did not mandate a similar conclusion.

The judgment against Foxworth-Galbraith is reversed. The judgment against Arizona Public Service is affirmed.

JACOBSON, P. J., and DONOFRIO, J., concur.