650 So.2d 1102 (1995)
Thomas E. KENNEDY and Michael T. Carp, Appellants,
v.
Nicholas MOREE and TCI Telecommunications, Inc., a Delaware Corporation, Appellees.
No. 94-1451.
District Court of Appeal of Florida, Fourth District.
February 23, 1995.
*1104 Susan B. Yoffee of Fleming, Haile, Shaw & Gundlach, P.A., North Palm Beach, for appellants.
Thomas E. Kingcade of Thomas E. Kingcade, P.A., West Palm Beach, for appellee-Nicholas Moree.
PARIENTE, Judge.
In this appeal we review a non-final order denying defendants' motion for summary judgment which raises the issue of worker's compensation immunity for its corporate officers and directors. We conclude that we have jurisdiction to review the trial court's order pursuant to rule 9.130(a)(3)(C)(vi), Florida Rules of Appellate Procedure. We reverse because even if we accept all of the facts in the light most favorable to plaintiff, as a matter of law the record in this case does not demonstrate a level of culpability attributable to defendants in their individual capacities sufficient to overcome their entitlement to worker's compensation immunity.
Ordinarily we would be without jurisdiction to review non-final orders denying motions for summary judgment, however meritorious the motions may appear. The supreme court in Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla. 1992), carved out a limited exception by adopting Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi). The rule *1105 states that an appellate court has jurisdiction to review non-final orders which determine "that a party is not entitled to workers' compensation immunity as a matter of law." This rule has been interpreted by our court as encompassing review of non-final orders denying summary judgment which are based on either the trial court's factual or legal determinations. See The Breakers Palm Beach, Inc. v. Gloger, 646 So.2d 237 (Fla. 4th DCA 1994); see also Ross v. Baker, 632 So.2d 224 (Fla. 2d DCA 1994).
On the day of his accident, plaintiff was employed as a general laborer by Kennedy Contracting, Inc. (employer). Plaintiff was seriously injured in the course of his employment when he fell over a television cable while carrying a bucket of hot tar across the roof. The tar splashed over him, inflicting third-degree burns. Plaintiff received and accepted worker's compensation benefits from employer. However, he sued the corporate officers of employer, Thomas E. Kennedy (Kennedy) and Michael T. Carp (Carp) (collectively defendants), along with Telecommunications, Inc. (TCI), the provider of cable television services to the home where plaintiff was injured, alleging each defendant's individual responsibility for the accident.
Kennedy is the president and director of employer and Carp is the vice president, secretary, treasurer and director of employer. Defendants assert that, as corporate officers and directors of employer, they are entitled to worker's compensation immunity as a matter of law pursuant to subsection 440.11(1), Florida Statutes (1993), unless they acted with culpable negligence towards plaintiff. Plaintiff agrees that culpable negligence is the standard to apply in determining whether immunity has been abrogated for Kennedy and Carp, but contends that the determination should be made by a jury. The trial court denied summary judgment without stating its reasons.
The pertinent background and uncontradicted facts are that employer had contracted with homeowners Benjamin and Sandra Calissi to repair a roof damaged by Hurricane Andrew. Employer subcontracted with Charles Poore Roofing to perform some of the roofing work on the Calissi home. Plaintiff had worked on the roof for some time prior to the day he was injured. On the day of the accident, Lance Goodine, a supervisor for employer, told plaintiff to assist the employees of Charles Poore Roofing on the roofing work.
The cable, which caused plaintiff to trip, had been present on the roof during the entire roofing job, including the tear-off procedure and drying-in procedure. Goodine, as supervisor of employer, was aware of the presence of the cable. He made a conscious decision not to remove it, but rather, to have employees work around it. When asked why he did not remove it, Goodine testified:
It never was a real problem to any of us. I mean we tore the roof off, put the new dry-in back on, 10 tagged it, did everything with it there. It was just a TV cable. Ben Calissi was a pretty good guy, I didn't want to take his TV from him. Basically that's it.
It was undisputed that Carp had never been to the job site. Kennedy had been on the job site prior to the injury, but had not been on the roof. Neither Carp nor Kennedy saw the cable prior to the injury, nor were they told about the cable by anyone, including the supervisor on the job. Neither Kennedy nor Carp had any direct contact with plaintiff, nor had they met plaintiff prior to the injury. Additionally, they were not consulted about, involved in, or told about the decision to work around the cable rather than remove it.
Plaintiff contends that a number of issues of material fact remained concerning defendants' knowledge of the presence of the cable on the roof and the degree of negligence they possessed. Concerning the issue of knowledge, because Kennedy was on the job site, plaintiff argues a jury could infer that he could have seen the cable from the ground based on Goodine's testimony that it was visible from street level if a person was looking for it. Plaintiff also asserts that the supervisor's conscious decision to leave a loose cable on the roof constituted a violation of federal law, the Occupational Safety and Health Act (OSHA), which must be imputed to defendants.
*1106 Generally, worker's compensation is an exclusive remedy provided by statute for an employee injured on the job against his or her employer. However, an exception to this exclusivity permits third-party liability lawsuits against fellow employees who act with willful and wanton disregard, unprovoked physical aggression or gross negligence with respect to another employee. Subsection 440.11(1) specifically provides, in pertinent part, that:
The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death....
Prior to 1988, an injured employee was permitted to sue a corporate officer, director or supervisor of an employer for gross negligence, placing the corporate official in the same position as a fellow employee even when performing the employer's nondelegable duty to maintain a safe work place. Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987). In Streeter, the supreme court concluded that by the plain language of subsection 440.11(1) the statute "unambiguously impose[s] liability on all employees for their gross negligence resulting in death or injury to their fellow employees. This imposition of liability is blind to corporate status." Id. at 271.
In 1988, the legislature amended subsection 440.11(1) in response to Streeter, specifically differentiating the tort liability of corporate officers, directors or supervisors of an employer from the liability of fellow employees. 1988 Fla. Laws ch. 88-284. The following pertinent language was added:
The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082.
To interpret the effect of this amendment, we must look to section 775.082, Florida Statutes (1993), which sets forth the penalties for categories of crimes, to determine which violations of law carry penalties in excess of 60 days. Under this section, only those crimes constituting a first-degree misdemeanor or higher provide penalties which exceed 60 days. Conduct tantamount to a second-degree misdemeanor would not abrogate a managerial employee's worker's compensation immunity under subsection 440.11(1) because a second-degree misdemeanor carries a maximum term of imprisonment not exceeding 60 days. § 775.082(4)(b), Fla. Stat. (1993).
Thus, in cases such as the instant case, when evaluating whether the negligent conduct of the managerial employees rises to a level sufficient to abrogate their statutory immunity, such negligence must be equivalent to a violation of law constituting a first-degree misdemeanor or higher crime. Section 784.05, Florida Statutes (1993), pertains to negligent conduct for which criminal penalties will be imposed. Subsection 784.05(2) provides that "[w]hoever, through culpable negligence, inflicts actual personal injury on another commits a misdemeanor of the first degree." By comparison, subsection 784.05(1) provides that whoever through culpable negligence "exposes another person to personal injury" commits a misdemeanor of the second degree. Thus, pursuant to subsection 440.11(1), there would be no worker's compensation immunity for a managerial employee who, through culpable negligence, actively inflicted injury, but there would be immunity for the managerial employee who passively exposed an employee to injury even if the employee's conduct otherwise could be deemed culpably negligent.
*1107 The supreme court in Eller v. Shova, 630 So.2d 537, 541 (Fla. 1993), in upholding the constitutionality of this amendment, explained:
The amendment provides for heightened immunity to policymaking types of employees by raising the degree of negligence necessary to maintain a civil tort action against such employees from gross negligence to culpable negligence when those employees are engaged in managerial or policymaking decisions.
Culpable negligence has been defined through case law as:
[N]egligence of a gross and flagrant character which evinces a reckless disregard for the safety of others. It is that entire want of care which raises a presumption of indifference to consequences.
Ross, 632 So.2d at 226 (citing Killingsworth v. State, 584 So.2d 647 (Fla. 1st DCA 1991)); State v. Greene, 348 So.2d 3 (Fla. 1977); Fla. Std. Jury Instr. (Crim.); see also Eller, 630 So.2d at 541.
In this case, the undisputed facts are that Carp never even visited the job site. Neither defendant had any contact with plaintiff or participated in the decision to leave the cable on the roof. Although Kennedy visited the job site, he was unaware of the cable. At most, Kennedy failed to see the cable and warn plaintiff about it or remove it when he was on the job site. Even if Kennedy should have known of the presence of the cable because it was visible from the ground, this constructive knowledge and failure to act simply does not rise to the level of culpable negligence equivalent to a first-degree misdemeanor or greater. See Ross; Pinnacle Constr., Inc. v. Alderman, 639 So.2d 1061 (Fla. 3d DCA 1994).[1]
It was Goodine, not defendants, who was charged with supervising the job site and who had actual knowledge of this potentially hazardous condition. His actions are imputed to the employer and not, as plaintiff argues, to the individual corporate employees. Providing a safe place to work is the essence of the employer's responsibility to its employees; its officers and directors are not subject to a third-party lawsuit for the failure of the employer to provide a safe workplace. Such an exception would essentially obliterate the immunity provided by statute. Employer's status as a qualifying general contractor also does not in itself eliminate immunity. Lake v. Ramsay, 566 So.2d 845 (Fla. 4th DCA 1990).
We lastly address plaintiff's contention that defendants' actions constituted a violation of certain OSHA standards. Since the maximum penalty under federal law for a violation of OSHA is six months imprisonment, plaintiff argues that an OSHA violation will abrogate immunity pursuant to subsection 440.11(1). Even assuming that the two statutes should be read in pari materia, not every violation of OSHA has the potential for imprisonment. An individual can be imprisoned for a violation of an OSHA standard only if: 1) the employer willfully violates any standard and that violation caused death to any employee; 2) a person gives advance notice of any inspection to be conducted without authority from the Secretary or his designees; 3) a person knowingly makes any false statement, representation or certification in any document required to be maintained by OSHA. 29 U.S.C. § 666(e-g) (1994). None of the conduct attributed to Carp or Kennedy constitutes a violation of any of these sections of OSHA which could result in incarceration. See also Fisher v. *1108 Shenandoah General Constr. Co., 498 So.2d 882 (Fla. 1986).
We are certainly sensitive to the notion that the factual record in a summary judgment proceeding should be construed in the light most favorable to the nonmoving party. We are also cognizant that summary judgments are rarely favored in negligence cases. If we had the slightest doubt as to whether the facts, construed in the light most favorable to plaintiff, would support a finding of conduct tantamount to a first-degree misdemeanor or a higher crime, we would affirm the denial of summary judgment. However, the record is devoid of facts which could support the legal standard for overcoming worker's compensation immunity. Accordingly we reverse with directions to enter judgment for defendants.
GLICKSTEIN and WARNER, JJ., concur.
NOTES
[1] The cases cited by plaintiff for the proposition that the degree of negligence of the party claiming immunity must be submitted to a jury do not support such a broad statement of the law. Notably, in Courtney v. Florida Transformer, Inc., 549 So.2d 1061, 1065 (Fla. 1st DCA 1989), a case involving gross negligence, the first district stated that where the line separating simple negligence from gross negligence is doubtful or indistinct, the question of whether the negligence is ordinary or gross should be submitted to the jury. We agree with that general statement of the law. It should also be noted that Marquez v. Heim Corp., 632 So.2d 85 (Fla. 3d DCA 1993), and Madaffer v. Managed Logistics Systems, Inc., 601 So.2d 1328 (Fla. 2d DCA 1992), relied on by plaintiff, involved the standard of gross negligence and not culpable negligence. If the issues in this case were to be governed by the standard of gross negligence, the question of whether or not to grant summary judgment based on defendants' conduct would be closer.