SCHWARTZ, Chief Judge.
On January 7, 1998, Guillermo Pacheco was electrocuted while working as a plasterer during the construction of a warehouse building in Medley. The accident occurred as he was standing on a scaffold or “swing stage” when a metal measuring tape he was holding came in contact with a Florida Power & Light high power line. These appeals are from summary judgments entered in the ensuing wrongful death action in favor of the power company and several other co-defendants, E.T. Plastering, Inc., his employer, and W.J. Miranda Construction Company and William J. Miranda, individually, the alleged general contractors on the job.[1] We reverse in part and affirm in part.
I.
We have little difficulty in concluding that Florida Power & Light was not entitled to summary judgment. To the direct contrary, extensive lay and expert testimony clearly established jury questions as to whether the power company was guilty of negligence which was a legal cause of Pacheco’s death in
(a) refusing to re-route, insulate by “sleeving,” or entirely de-energize the preexisting line during the entire course of construction, as FPL was requested prior to its commencement, Mason v. Arizona Public Serv. Co., 127 Ariz. 546, 622 P.2d 493 (1980);[2] McCormick v. Great Western *1161 Power Co., 214 Cal. 658, 663, 8 P.2d 145, 147 (1932);[3] Cerretti v. Flint Hills Rural Elect. Co-op. Ass’n, 251 Kan. 347, 837 P.2d 330 (1992);[4] Weaver v. Valley Elect. Membership Corp., 615 So.2d 1375 (La.Ct.App.1993);[5] Grabill v. Worthington Indust., Inc., 98 Ohio App.3d 739, 649 N.E.2d 874 (1994),[6] and in
(b) nevertheless maintaining energized wires too close to the construction in alleged violation of reasonable engineering standards and specified provisions of the South Florida Building Code and the National Electric Safety Code. See Rist v. Florida Power & Light Co., 254 So.2d 540 (Fla.1971)(paintbrush pole struck power line); Hardware Mut. Cas. Co. v. Tampa Elec. Co., 60 So.2d 179 (Fla.1952); Vanlandingham v. Florida Power & Light, 154 Fla. 628, 18 So.2d 678 (1944); Teddleton v. Florida Power & Light Co., 145 Fla. 671, 200 So. 546 (1941); Leftwich v. Florida Power & Light Co., 673 So.2d 56 (Fla. 3d DCA 1996); Jones v. Florida Power & Light Co., 552 So.2d 284 (Fla. 4th DCA 1989), review denied, 563 So.2d 631, 632 (Fla.1990); Padgett v. West Florida Elec. *1162 Co-op., Inc., 417 So.2d 764 (Fla. 1st DCA 1982); Norris v. City of Miami, 367 So.2d 1038 (Fla. 3d DCA 1979); Florida Power Corp. v. Taylor, 332 So.2d 687 (Fla. 2d DCA 1976); Florida Power & Light Co. v. Barrs, 127 So.2d 896 (Fla. 3d DCA 1961); Bush v. Alabama Power Co., 457 So.2d 350 (Ala.1984).
Instead of entirely cutting the power, sleeving or moving the lines to a safe position during the construction, FPL insisted on a procedure in which it de-ener-gized the line only when it was notified by the builders that work was to be done nearby at a particular time. On the day of the accident, however, the contractor did not tell the company that Pacheco and his co-workers would be near the lines, and they remained energized. From these facts, FPL argues that the contractors’ negligence (and the action of Pacheco in “running” the tape into the wire) constituted “unforeseeable,” independent, “intervening” acts which preclude its responsibility. This argument is entirely incorrect. It is obvious that the danger of coming in contact with an electrified line — by whatever means — falls squarely within the “zone of risk,” and, all the more clearly, the “greater-than-usual zone of risk associated with the business enterprise [the power company has] undertaken” created by FPL’s allegedly negligent failure to move the line or otherwise render it safe. McCain v. Florida Power Corp., 593 So.2d 500, 504 (Fla.1992). Since this is true, it does not matter — for summary judgment (or directed verdict) purposes — that FPL perhaps could not foresee the exact manner in which the accident occurred, or that even highly negligent conduct such as that of the contractors also played a part in the accident. Moyer v. Martin Marietta Corp., 481 F.2d 585 (5th Cir.1973); General Dynamics Corp. v. Adams, 340 F.2d 271 (5th Cir.1965); Florida Power & Light Co. v. Periera, 705 So.2d 1359 (Fla.1998); McCain, 593 So.2d at 500; Vining v. Avis Rent-A-Car Sys., Inc., 354 So.2d 54 (Fla.1977); Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441 (Fla.1961); K-Mart Enters. v. Keller, 439 So.2d 283 (Fla. 3d DCA 1983), pet. for review denied, 450 So.2d 487 (Fla.1984); Padgett, 417 So.2d at 764; Mozer v. Semenza, 177 So.2d 880 (Fla. 3d DCA 1965).
II.
As to the remaining appellees, however, we conclude that summary judgment was properly entered because of the immunity conferred by section 440.11(1), Florida Statutes (1997) of the Worker’s Compensation Law.[7]
A.
In doing so, we first reject the plaintiffs claim that section 553.84, Florida Statutes (1997), which creates a cause of action for violations of the State Minimum Building Codes,[8] such as were claimed in this case, overcomes or “trumps” the effect of section 440.11. To support this position, she mistakenly relies on Comptech Int’l, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219 (Fla.1999), which holds only that a statutory cause of action may be maintained despite the existence of the judge-made economic loss rule. This is a far cry indeed from the broad employer immunity from liability actions specifically conferred by the legislature as an indispensable element of the worker’s compensation system. See Chamberlain v. Florida Power Corp., 144 Fla. 719, 198 So. 486 *1163 (1940). The law simply does not permit recognition of the immunity exception for which the appellant contends. See Crosby v. Reg’l Util. Bd., 400 So.2d 1024 (Fla. 1st DCA 1981); Pappas v. Hill-Staton Engineers, Inc., 183 Ga.App. 258, 358 S.E.2d 625 (1987).
B.
Although the issue is closer, we also disagree with the contention that the conduct of the employer and general contractor falls within the recognized exception to section 440.11 immunity which arises when, objectively viewed, alleged employer misconduct either
‘exhibit[s] a deliberate intent to injure or ... is substantially certain to result in injury or death.... ’
Turner v. PCR, Inc., 754 So.2d 683, 687 (Fla.2000). In essence these defendants either forgot or neglected to tell Florida Power & Light to de-energize the lines or to tell their workers they had failed to do so. While these derelictions were very serious and had tragic consequences, we cannot find that they rise to the level of an intentional tort required to invoke the Turner exception. See Holderbaum v. Itco Holding Co., 753 So.2d 699 (Fla. 3d DCA 2000), review denied, No. SC00-1121, 776 So.2d 275 (Fla.2000)(failure to warn of later realized specific threat to kill employee not “intentional tort”); Kline v. Rubio, 652 So.2d 964 (Fla. 3d DCA 1995), review denied, 660 So.2d 714 (Fla.1995); see also Pinnacle Constr. Co. v. Alderman, 639 So.2d 1061 (Fla. 3d DCA 1994). In so holding, we note that the cases which have actually applied the Turner doctrine, especially Turner itself, have characteristically involved a degree of deliberate or willful indifference to employee safety which simply does not exist in this case. Compare Subileau v. Southern Forming, Inc., 664 So.2d 11 (Fla. 3d DCA 1995); Kennedy v. Moree, 650 So.2d 1102 (Fla. 4th DCA 1995); Pinnacle, 639 So.2d at 1061; cf. Gerth v. Wilson, 774 So.2d 5 (Fla. 2d DCA 2000); Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), review denied, 581 So.2d 1307 (Fla.1991).
Affirmed in part, reversed in part.

. Summary judgment was denied only to one co-defendant, the owner of the property.

. Here it was observable that the south wall of the new building was generally aligned with the south wall of the existing Fox-worth-Galbraith building. r It was discoverable upon inspection that appellant’s wires were closer than the prescribed clearances in regard to the old building. It was further observable that if the new building was to be of significant height, it would ap *1161 proach appellant’s uninsulated high voltage power line. There is no indication that the projected height of the new building was anything but readily available upon inquiry by appellant. It is common knowledge that a construction project ordinarily entails the movement of men and materials about its periphery. The National Electrical Code, in effect, prescribed the zone of danger with its minimum clearances. It was not necessary that the power company should have been able to anticipate the exact or particular injury or the exact or particular manner in which it might occur. Kirton v. Williams Electric Co-Op, supra. We think that injury from contact of some nature with a high voltage line located this close to a construction project of which the power company had actual notice was sufficiently foreseeable so that the jury might have concluded that APS was negligent under all of the circumstances in not taking the further precaution of de-energizing the line. Under tire legal tests set out above, APS could not discharge its duties by waiting for another party to take the initiative.
Mason, 127 Ariz. at 553, 622 P.2d at 500.

. [Wjhere there is reason to apprehend that persons may come in contact with [wires] in the pursuit of their calling or where they may be reasonably expected to go, they should in some manner be protected.’ Stated in other words, where it reasonably may be anticipated that persons will come in contact with the deadly wire, 'the obligation of the electric company is alternative in its nature. Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.' (citations omitted)
McCormick, 214 Cal. at 663, 8 P.2d at 147.

. Conformity with an industry-wide standard when a high voltage line was originally installed does not preclude a finding of negligence where a prudent person engaged in the industry would have taken additional precautions under the circumstances.
Cerretti, 251 Kan. at 357, 837 P.2d at 339.

. When the insulation, height, distance and other safety attributes of transmission lines are considered in the light of developmental factors (population and building density and use of land and structures), even though these factors are not attributable, but are, or should be known, to the utility, the utility can no longer fulfill its duty by maintaining the status quo of protective measures which may have been deemed before development to be legally sufficient to avoid accidents at the work place. The utility’s duty is to take reasonable measures to assure that workers legitimately in the area are able to work without an unreasonable risk of harm from high voltage transmission lines.
Weaver, 615 So.2d at 1383.

. In the instant action, there was testimony to demonstrate that construction of an immovable building was going on close to these wires and that employees of CSP were able to foresee that construction equipment would be utilized around, near, or under these wires. Again, whether or not appellants had alternatives available to them, and whether or not their failure to use such alternatives makes them negligent, and to what extent, is a question for the jury.
Grabill, 98 Ohio App.3d at 747, 649 N.E.2d at 880.

. This determination makes it unnecessary to consider other possible grounds for affir-mance as to any of these defendants. Cf. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984).

. Now called the Florida Building Code.